**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**DAVID W. WOOD,**

               **Plaintiff,**

**v.**                                    **Civil Action No. 3:15-cv-00594-MHL**

**CREDIT ONE BANK, N.A.,** *et al.*,

               **Defendants.**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO STRIKE EXPERT TESTIMONY AND OPINIONS OF JAMES LYNN**

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Plaintiff David Wood, by Counsel, has moved the Court to exclude the testimony and opinions of the expert witness offered by Defendant Credit One Bank. For the reasons that follow, the Court should grant the Motion.

## I.    OVERVIEW

**A.    Case Background.**

Plaintiff David Wood's mother, Dyan Lollis, stole his identity and opened multiple credit accounts in his name without his knowledge, including an account with Credit One. Ms. Lawless intercepted statements from Credit One to conceal the account she opened, and no payments were ever made on the balance she charged to the account. Credit One eventually wrote off the balance as uncollectable and sold the account before Plaintiff was ever aware his mother had opened it.

Plaintiff learned of the identity theft and disputed the Credit One account with the three largest credit reporting agencies ("CRAs"), Equifax, Experian, and Trans Union. As is required by the Fair Credit Reporting Act, ("FCRA"), the three CRAs communicated the disputes to

Credit One, who then became obligated to conduct an investigation as set forth in 15 U.S.C. § 1681s-2. That section of the FCRA requires that those who furnish information to CRAs, upon notice of a dispute from a consumer regarding information it furnished to conduct a reasonable investigation and to accurately report the results of same.  15 U.S.C. § 1681s-2(b)(1). Plaintiff has alleged that Credit One failed to meet its obligations to properly investigate Mr. Wood's disputes, and discovery has borne out that Credit One did little more than check its own internal records regarding Mr. Wood's account and verified using an outside source that Mr. Wood's address on the account was Mr. Wood's address.

Fair Credit Reporting Act cases with allegations that a furnisher defendant failed to investigate and correct credit reporting information nearly always require proof of the same narrow set of liability elements: Was the disputed information inaccurate? Was an "investigation" conducted?  Was the investigation "reasonable"? Did the Defendant correctly respond to the dispute after the investigation process? *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426, 431–32 (4th Cir. 2004).

Credit One now seeks to offer the opinion of a supposed expert who would (apparently) rubber stamp Credit One's cursory investigations as reasonable and in compliance with the FCRA's requirements. Mr. Lynn has no relevant FCRA experience or knowledge that would permit him to render the opinions he proffers, he obtained his entire "expertise" by learning it from the documents *he read in this case*, he provides no methodology whatsoever in arriving at his conclusions, and does nothing more than repeat facts in reaching impermissible legal conclusions that what Credit One did complied with the FCRA. The Court should bar such impermissible evidence, as Mr. Lynn cannot come close to meeting the strictures for the admission of expert testimony.

**B.      Mr. Lynn's Opinions And Experience With The FCRA.**

Mr. Lynn presented himself in this case as an expert in banking and financial services. After all – he worked for a bank until 1995.  He taught 15 sessions of a private course to bankers that included a section on consumer protection laws.  And he has been designated as an expert in a multitude of cases.  His opinion reads to the uninitiated as confident and authoritative.

But as became clear at Mr. Lynn's deposition, in whatever field he is an expert, it is certainly not credit reporting or the standards of the Fair Credit Reporting Act.  (1.) While Mr. Lynn worked for a bank, he was merely a commercial loan officer (selling loans and accounts to business customers) who had no contact or reason to learn anything about the Fair Credit Reporting Act, the investigation of consumer disputes or even identity theft.  (2.) While Lynn did teach a private course titled "Consumer Lending" with a section surveying consumer protection laws, he merely used a prewritten teachers addition of someone else's materials – materials that were written at least a year before the Furnisher section of the FCRA (§1681s-2) was even enacted in 1997.  (3.) And while Mr. Lynn now uses phrases and text that appear to deal with the FCRA and furnisher investigations, he admits under oath that he learned them reading the documents and depositions *from this case*.

Mr. Lynn's Report offers opinions on multiple issues in this case, including that Credit One complied with the FCRA sections at issue, and that it reasonably investigated Plaintiff's disputes. (Ex. 1, Lynn Report at 5–6.)  On examination, however, it is clear that Mr. Lynn simply repeats a narrative of what Credit One did with Plaintiffs' disputes and then concludes without a methodology or basis that what Credit One did complied with the FCRA. (*Id.* at 3–6.) Nowhere does Mr. Lynn even attempt to explain the standards to which furnishers are held under Section 1681s-2(b) (other than to simply recite the statutory language), identify how those standards are

applied throughout the industry, or definitively establish the standard of care that would guide furnishers as they endeavor to comply with those standards. All he says, in essence, is that Credit One did what it did, and those actions complied with the statute.

Apart from the report he provided, Mr. Lynn also sat for a deposition in this case. He testified that his business, the Lynn Group, Inc., which he operates out of his home, has no employees other than him, and no other owners. (Ex. 2, Lynn Dep. at 6:20–7:8.)

Mr. Lynn is not an attorney. He agreed that the most significant part of his opinion in this case is his interpretation of the meaning of parts of the FCRA, an area of law for which he has never testified at a trial. (Ex. 2, Lynn Dep. at 7:21–23, 10:1–6, 11:16–22.) He did not recall reading the *Johnson v. MBNA* or *Sanders v. BB&T* cases—two significant Fourth Circuit opinions interpreting precisely the sections of the FCRA at issue here—before Defense Counsel provided them to him in connection with this case. (*Id.* at 11:16–12:6.) He also testified as to his belief that his report was premised on his belief that he was qualified to render an opinion *regarding the meaning of the law*, as it pertains to "consumer and/or banking matters." (*Id.* at 9:20–24.)

As to his purported expertise in the FCRA, when asked an open-ended question, Mr. Lynn testified that he acquired that expertise:

> [B]y the cases that I've worked on and the fact that I am a user of credit reports, given the professional experience that I have.
>
> The preponderance of my professional experience has been as a lending officer with Merrill National Bank, as a training officer with Merrill National Bank, as a consultant to various financial institutions around the country, and -- and obviously from litigation. And in the context of that, we read credit reports. We understand what they are and we read them.

(*Id.* at 13:716.)   Then, however, in further discussing his experience at Merrill, Mr. Lynn confirmed that he never worked in the area of handling credit-reporting issues or disputes for

consumers (he was instead a commercial lender), and he had no experience with the ACDV process at issue here. (*Id.* at 16:24–17:12.) He also confirmed that he obtained a "significant part" of his expert knowledge about furnisher obligations under the FCRA by reviewing documents and information in this lawsuit – and possible some other(s) he could not recall that may have dealt with the FCRA. (*Id.* at 18:24–19:3.) The other component of his expertise was information that he obtained by teaching – about 15 times - a private course for bankers that dealt sparsely with the FCRA. (*Id.* at 19:4–12.) His manual for teaching was given to him.

Mr. Lynn was unable to identify specific instances in which he rendered expert opinions regarding furnisher obligations under the FCRA, vaguely referencing five instances, and none within the last ten years. (*Id.* at 20:24–21:7.) He could not recall specific FCRA issues on which he opined in cases in which he was retained as an expert on furnisher obligations, identifying only two such cases. (*Id.* at 22:24–23:21.) He has no expertise with the e-Oscar system that CRAs use to transmit consumer disputes to furnishers like Credit One, and has no knowledge regarding the process by which such disputes find their way to Credit One despite claiming specialized knowledge in these areas. (*Id.* at 24:7–9, 27:12–28:22.) When asked whether he claimed to "have a wealth of knowledge in furnisher credit reporting disputes under the Fair Credit Reporting Act," Mr. Lynn responded:

> No. I'm not -- I'm not representing myself as an expert in the technical details of how information is communicated. I'm representing myself as an expert on the facts of the case, on what happened, what was supposed to happen, what should have happened and so forth.

(*Id.* at 29:21–30:3.)

Regarding identity theft, another significant issue in this case, all he testified that he knew about how account activity may help diagnose identity theft is that one of Credit One's witnesses in this case testified that she reviewed Excel spreadsheets "to look for various things," but he

could "not describe exactly what she did," except to say that he is "aware that that's the kind of task that's undertaken in financial institutions on an ongoing basis." (*Id.* at 34:10–25.)

Mr. Lynn also testified about the impact of Credit One having included with its report to the CRAs the notation that Plaintiff Wood was disputing the information from Credit One. As to that notation, known as an "XB" code, Mr. Lynn testified that its impact would be "negligible," a fact he learned by accessing an Internet site called "Bankers Online" a couple of days before his deposition. (*Id.* at 37:21–38:3, 38:25–39:6.) He could not recall where he learned about the existence of the XB code other than in this case. (*Id.* at 40:17–19.) He also had not done any legal research on court decisions regarding a creditor's removal of information from reports when a consumer disputes, nor had he never spoken with or listened to anyone from a CRA for an explanation about the use and requirements for use of an XB code, (*Id.* at 41:22–42:5.)

Regarding the accuracy of Credit One's reporting that Plaintiff was responsible for the Credit One account he did not open, Mr. Lynn confirmed that he has no expertise on contract law, whether a consumer was legally liable on a credit card debt under Virginia law, and could not offer an opinion as to whether Plaintiff was indeed liable for the Credit One account. (*Id.* at 42:6–16.) Plaintiff's damages, Mr. Lynn likewise confirmed that he has no expertise regarding psychological injuries or emotional distress resulting from identity theft, other than to agree that such injuries could result. (*Id.* at 42:17–25.)

Mr. Lynn could not recall an instance in which he gave an expert opinion that someone had not complied with federal consumer protection law generally or the FCRA in particular. (*Id.* at 43:2–11.) He could not state the number of cases in 2015 on which he was engaged as an expert for the defense side, directing counsel to his resume. (*Id.* at 45:21–46:3.)

Over a period of several years beginning in 1996 or 1997, he provided consulting work to about 25 financial institutions, and also taught a course through the Omega Performance Corporation, to about 15 of those institutions. (*Id.* at 47:14–48:24.) One part of that course touched on the FCRA, as a 15 to 20-page part of the 200-page course materials. (*Id.* at 49:4–22.) Omega provide the course materials, Mr. Lynn did not author them, although he claims to have obtained expert knowledge from reviewing those materials. (*Id.* at 51:12–21.) He did not, however, know whether those materials included information about furnisher obligations under Section 1681s-2(b), except to say that he recalled:

> [T]hat there was a description of the Fair Credit Reporting Act and what the highlights of the act and what the purpose of the act was, what consumer lenders ought to know about the act as they conduct themselves in the consumer lending environment in a community financial institution on an ongoing basis.

(*Id.* at 52:19–24.) He further explained that the program did not change in any material way during the time he gave it, which is significant because at the time he began teaching the course Section 1681s-2(b) *had not yet been enacted*. (*Id.* at 51:12–15, 52:2–53:2.) In summary, Mr. Lynn' testified that apart from "the materials that [he] presented with Omega and then either replicated or contemporaneously on [his] own for that consumer lending course," and his "work as a commercial banker prior to '95 and earlier at Merrill National Bank," (*none of which dated after the FCRA's furnisher provisions existed*) all of the knowledge that [he] claim[s] makes an expert regarding the Fair Credit Reporting Act's consumer dispute requirements, comes from information [he] learned as an expert witness." (*Id.* at 53:3–11.) No court has ever found him qualified to give expert testimony on FCRA issues. (*Id.* at 64:25–65:4.)

Mr. Lynn was also questioned on the manner in which information is included in certain fields of an ACDV, because one of them for Plaintiff's disputes mentioned a police report. (*Id.* at 73:3–11.) He did not know who puts relevant information into an ACDV, saying his

"understanding is that is the consumer." (*Id.* at 73:3–15, 74:19–25.) He also testified that he did not know how a consumer would create or put information into an ACDV, or whether consumers could input relevant information through CRA websites, but thought that the Plaintiff created the ACDVs for his disputes through such a website. (*Id.* at 75:2–76:13.)

## II.    ARGUMENT AND AUTHORITIES

### A.    The Standards For Admission Of Expert Evidence.

As the party seeking to admit expert evidence, Credit One must establish the "admissibility [of the expert testimony] by a preponderance of the evidence." *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*, No. CV CCB-13-2053, 2016 WL 4426681, at *12 (D. Md. Aug. 22, 2016). The threshold issue is whether the purported expert is "qualified to testify competently regarding the matters he intends to address." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Under Rule 702 of the Federal Rules of Evidence, "a witness who is qualified as an expert may testify in the form of an opinion if: '(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.'" *Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2015 WL 165315, at *1 (E.D. Va. Jan. 12, 2015) (Spencer, J.) (quoting FED. R. EVID. 702(a)–(d)). To that end, when assessing expert testimony, the Supreme Court's seminal decision in *Daubert* teaches that the Court acts as a "'gate-keeper' whose prime task is to assess whether the proffered evidence is sufficiently **reliable** and **relevant**." *Id.* at *1 (quoting *Bourne ex rel. Bourne v. E.I. DuPont de Numours & Co.,* 85 F. App'x 964, 967 (4th Cir. 2004) (emphasis added)). "Like all other evidence, expert testimony must 'make the existence **of any**

*fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence. . . ." *United States v. Ging-Hwang Tsoa*, 2013 WL 6145664, at *12 (E.D. Va. Nov. 20, 2013) (Cacheris, J.) (quoting FED. R. EVID. 403) (emphasis added).

The touchstone of admissibility for expert testimony is not the correctness of the expert's conclusions but, rather, "the soundness of his methodology." *Boydstun v. U.S. Bank Nat'l Ass'n ND*, No. 3:11-CV-00429-HZ, 2016 WL 2736104, at *3 (D. Or. May 11, 2016). As the Eleventh Circuit has put it, reliability is distinct from the expert's qualifications meaning, that "while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Thus where, like here, "the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting FED. R. EVID. 702 advisory committee note to 2000 amendment).

**B.      Mr. Lynn's Opinions Do Not Survive *Daubert* Scrutiny.**

**1.      Mr. Lynn does not set forth a methodology for reaching his conclusions, dooming their admissibility.**

Nowhere in Mr. Lynn's report or deposition testimony does he set forth the methodology for reaching his conclusions, let alone provide any basis for their reliability. *Frazier*, 387 F.3d at 1261. He simply parrots Credit One's version of what happened with its processing of Plaintiff's disputes, and then opines that Credit One acted reasonably in doing what it did (which is essentially nothing). Mr. Lynn does not explain how others in the industry handle similar

disputes, probably because the deposition testimony set forth above shows that he has no such knowledge and never sought it out. The comparison of the defendant's conduct against established industry standards is a recognized, accepted use of expert testimony in FCRA cases:

> Mr. Hendricks conveyed prevailing industry norms that do utilize additional identifiers based on his extensive experience with the industry. This type of information is useful to the jury because it allows them to infer from such widespread practice that industry players believe increasing the number of individual identifiers strengthens the accuracy of the consumer reports. It provides, as this Court has already explained, a benchmark by which the jury can assess whether Defendant's methods are reasonable.

*Williams v. First Advantage LNS Screening Sols. Inc.*, No. 1:13CV222-MW/GRJ, 2015 WL 9690018, at *4 (N.D. Fla. Mar. 31, 2015). Here, Mr. Lynn provides nothing that ties Credit One's actions to the industry standards for evaluating disputes. Expert testimony bereft of an explanation of the methodology behind them or other evidentiary foundation are inadmissible. *Elkins v. Ocwen Fed. Sav. Bank*, No. 06 CV 823, 2007 WL 4125747, at *4 (N.D. Ill. Nov. 13, 2007) (excluding such evidence under Rule 702). That is because "only a bare conclusion" will not suffice; "'[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998) (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989), alteration in original).

> 2.   **Mr. Lynn has not established his expertise by knowledge, skill, experience, training, or education to render the FCRA-related opinions he proffers.**

Decisions do not dictate that experts be gain their knowledge by any particular method. As Rule 702 sets forth, an expert may be qualified to offer expert testimony based on his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. At the very least, however, the purported expert must explain the background that led to the acquisition of his supposed expertise on the subject about which he will testify. *See Hickerson v. Yamaha Motor*

*Corp.*, No. 8:13-CV-02311-JMC, 2016 WL 4073088, at *3 (D.S.C. Aug. 1, 2016) (finding expert qualified to offer evidence relating to interpretation of patents for alternate designs for product on which plaintiff was injured based upon education in mechanical engineering, substantial experience in forensic engineering, accident simulation, and teaching mechanical engineering). It is therefore well-settled that "'[t]he fact that a proposed witness is an expert in one area, does not ipso facto qualify him to testify as an expert in all related areas.'" *Estate of Anthony Anderson v. Strohman*, No. CV GLR-13-3167, 2016 WL 4013638, at *5 (D. Md. July 27, 2016) (quoting *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001), emphasis in original).

Here, while Mr. Lynn's credentials indicate that he may be qualified to offer opinions regarding many banking-related issues, they fail to show that he has any expertise, skill, knowledge, training, or anything even remotely related to issues under the FCRA. (Ex. 2, Lynn Resume.) In his report, he vaguely points only to his "extensive experience in the financial services industry for more than 30 years," and his "training and experience in consumer and commercial lending, but also on my knowledge of the various federal and state consumer protection laws and regulations that govern consumer lending practices, policies, and procedures." (Ex. 1, Lynn Report at 1–2.) At his deposition, he testified to just a handful of instances in which he has offered expert testimony on FCRA issues, but could not remember any specifics. He was unable to identify the cases themselves, or the specific portions of the FCRA on which he opined. In short, Mr. Lynn is offered as an expert in an area in which he has virtually no expertise or specialized knowledge. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 393 (D. Md. 2001) ("[A]n expert's opinion is helpful to the trier of fact, and therefore relevant under Rule 702, 'only to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion

informed by the witness' expertise) rather than simply an opinion broached by a purported expert.'"). The Court should therefore exclude his testimony on this basis alone. *Young v. Swiney*, 23 F. Supp. 3d 596, 611 (D. Md. 2014) ("[A]n expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise."); *see Steele v. Kenner*, 129 F. App'x 777, 781 (4th Cir. 2005) (finding no abuse of discretion in concluding neurologist was not qualified to offer expert opinion in field of neuropsychology because that subject was "outside his area of expertise"); *see also Jackson v. United States*, No. 5:08-03876-MBS, 2010 WL 2228378, at *7 (D.S.C. May 28, 2010) (concluding that neuropsychologist was not qualified to testify as to the standard of care for pediatricians).

All Mr. Lynn has done to gain his supposed expertise in the issues on which he opines is read and review some information related to the FCRA and furnisher issues. If that is all that is required, then Plaintiff's Counsel, the Court, and the Court's staff are all experts on these same issues, as they have reviewed the same things.

Moreover, Mr. Lynn identifies as some things he reviewed information for a course he began teaching in 1996 that touched on consumer-lending issues. He testified that those materials were provided to him, meaning he did not research the content or author the materials himself, and they did not change during the entire time he taught the course. The timing of this coursework and consistency of the materials is significant as it pertains to Mr. Lynn's acquisition of expertise in the area of consumer lending, because these materials were created—and went unaltered over the time period in which he taught—*before* Congress enacted 15 U.S.C. § 1681s-2. Mr. Lynn therefore could not possibly have gained any expertise on the points upon which he opines from his time teaching this course.

    **3.**    **Mr. Lynn's opinion that Credit One's investigation was reasonable is contrary to law and therefore irrelevant and inadmissible.**

Though the standards under *Daubert* are intended to be flexible, numerous courts have held that expert testimony that is contrary to the law is inadmissible. *See, e.g.*, *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1245 (N.D. Ala. 2000), *aff'd*, 284 F.3d 1237 (11th Cir. 2002) (excluding expert analysis contradicting well-established law); *Martinez v. Rabbit Tanaka Corp.*, No. 04-61504-CIV, 2006 WL 5100536, at *14 (S.D. Fla. Jan. 6, 2006) (striking plaintiff's damages expert on the grounds that his method "contravene[d] well established law in both Florida and the Eleventh Circuit"). Courts exclude such testimony because, logically, it "cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact." *Delta Brands*, 387 F. Supp. 2d at 806. Mr. Lynn's opinion regarding the reasonableness of Credit One's investigation of Plaintiff's dispute is contrary to the established standards, making his opinion inadmissible.

The evidence has established—and Mr. Lynn does not even attempt to dispute in his report—that all Credit One did to investigate Plaintiff's dispute was to verify that his identifying information matched that which was given when his account was opened. (*See* Ex. 1, Lynn Report at 4–5.) That result of course stands to reason, as Plaintiff made it clear that the account was opened as a result of identity theft committed by his mother. Using someone's correct identifying information to open accounts fraudulently is the point of identity theft, and Plaintiff's mother would of course have all of his information because of their relationship. But, as set forth above, just verifying what Credit One had in its own records and parroting that information back to the CRAs is not the type of "searching inquiry" or "systematic investigation" the Fourth Circuit identified in *Johnson. Johnson*, 357 F.3d at 431. It is the opposite.

Consistent with *Johnson* and the cases that have followed it, the Court should exclude Mr. Lynn's testimony in its entirety because it is irrelevant and contrary to the *Johnson* court's holding that the investigation must be more than simply verifying information Credit One had in its records. *Johnson* speaks of something more to qualify as reasonable, and Mr. Lynn's opinions to the contrary cannot possibly meet those standards. Those shortcomings render Mr. Lynn's opinion on the issue of the reasonableness of Credit One's investigation entirely irrelevant as it could not possibly add any value to any potential issue at trial. The proper outcome is for the Court to exclude it.

    **4.    Mr. Lynn's opinions are impermissible legal conclusions and improperly invade the province of the factfinder.**

Courts universally reject legal conclusions disguised as supposed expert testimony. *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CV CCB-13-617, 2016 WL 524279, at *4 (D. Md. Feb. 10, 2016) ("Expert testimony on an ultimate issue is excludable under Rule 702 if it does not aid the jury, and '[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination.'") (quoting *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002), alteration in original); *Williams*, 2015 WL 9690018, at *3 ("Defendant is correct that experts may not testify as to ultimate legal issues."). That is because each case is already assigned an expert on the law—the judge. In drawing the distinction between expert opinion and legal conclusions, the Fourth Circuit has explained:

> We identify improper legal conclusions by determining whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." For example, courts have held inadmissible testimony that a defendant's actions constituted "extortion," that a

dog bite constituted "deadly force," that defendants held a "fiduciary" relationship to plaintiffs, and that a product was "unreasonably dangerous."

*Id.* (citations omitted).

Mr. Lynn's opinions are no different than these prohibited conclusions, as he provides only glib statements that purport to exonerate Credit One from liability here:

> In my opinion, the Bank's verifications were *reasonable, appropriate, and consistent with the standard of care*[1] in the consumer data furnishing industry that data furnishers use credible external sources of information as necessary and appropriate in order to enhance the completeness of consumer credit investigations.

> In my opinion, the conduct of Credit One Bank, NA *was compliant with* Section 1681s-2(b)(1)(A) as well as sub-sections (1)(B), (1)(C), (1)(D), and (1)(E).

(Ex. 1, Lynn Report at 5 (emphasis added).) Simply put, Mr. Lynn reaches legal inadmissible legal conclusions and bases them on nothing more than his say-so. Courts routinely exclude such opinions because whether particular conduct was "compliant" impermissibly "frame[s] the term in its traditional legal context." *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3448905, at *7 (E.D.N.C. May 29, 2015); *see In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 629 (S.D. W. Va. 2013) ("The questions of whether Bard's Avaulta products were not reasonably safe, for example, or whether Bard failed to warn, are questions for the jury, not for [plaintiff's expert]."); *see also Strong v. E.I. DuPont de Nemours Co., Inc.*, 667 F.2d 682, 686 (8th Cir. 1981) (affirming district court's exclusion of expert testimony in response to question "Is this an adequate warning?," because the question was similar to "Did he have capacity to make a will?"); *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 614 & n.31 (D.N.J.2002) (excluding expert's opinion as to whether "Defendants failed to provide adequate

---

[1] Mr. Lynn of course does not identify this standard of care, state the source from which he obtained it, or describe any facts relevant to this case that bring Credit One's actions within it. (*See* Ex. 1, Lynn Report at 5.)

warnings" because it "encroach[ed] upon the province of the jury."); *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3448905, at *7 (excluding expert testimony "as to whether a warning was 'adequate' or 'inadequate'" because it "would draw a legal conclusion, [and] is unhelpful to the jury"). Courts in the FCRA context regularly hold that this type of testimony is inadmissible, and this Court should join them. *Vandervort v. Nationstar Mort., LLC*, No. 2:14-CV-04014-NKL, 2015 WL 58463, at *4 (W.D. Mo. Jan. 5, 2015) ("Defendant's experts may not, however, opine about the legal requirements of the FCRA. Neither Goodman nor Shober is a legal expert, and neither one of them claims to have any expertise related to the FCRA specifically. The statutory requirements of the FCRA are legal questions for determination by the Court."); *Aleksic v. Clarity Servs., Inc.*, No. 1:13-CV-07802, 2015 WL 4139711, at *6 (N.D. Ill. July 8, 2015), *appeal dismissed* (May 31, 2016) ("As noted above, the interpretation of statutes and regulations is also off-limits for experts because it is the province of the judge to determine the law."); *Morris v. Equifax Info. Servs. LLC*, No. CIV.A. H-04-0423, 2007 WL 1091005, at *3 (S.D. Tex. Apr. 10, 2007) (striking expert testimony as offering legal conclusions).

### 5.    Mr. Lynn cannot provide evidence relating to Plaintiff's damages.

In further keeping with his propensity to offer opinions on issues for which he is not qualified, Mr. Lynn also takes on the question of Plaintiff's damages, commenting that "[t]here is no evidence of any damages as to Mr. Wood. Furthermore, there is no evidence on the record that would enable me to distinguish between any damages sustained by Mr. Wood among the multiple parties that are involved in the litigation."[2] (Ex. 2, Lynn Report at 7.) Even more egregious than his opinions on FCRA issues, these statements by Mr. Lynn are wholly unsupported by any expertise relating to the assessment of damages whatsoever. Mr. Lynn is not

---

[2] It is also noteworthy that Mr. Wood added the second sentence after Counsel for Credit One viewed an earlier draft of the report.

an economist, and he provides nothing at all in the way of knowledge, experience, training, or education to support his opinions relating to damages. FED. R. EVID. 702. While in his deposition he did agree that emotional distress was an element of recoverable damages in the FCRA context, he never spoke to or evaluated Plaintiff on that point, making his testimony on this issue inadmissible. *Williams*, 2015 WL 9690018, at *4 (excluding FCRA expert's conclusions on damages because he did not independently evaluate plaintiff's damages).

The Court should therefore exclude this evidence.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion and exclude the expert testimony and opinions of James Lynn.

Respectfully Submitted,

_____/s/_____
Leonard A. Bennett, VSB #37523
Susan M. Rotkis, VSB #40693
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
        srotkis@clalegal.com
        craig@clalegal.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of August, 2016, I will file a true and correct copy of the foregoing using the Clerk's CM/ECF system, which will automatically send a notice of electronic filing (NEF) to the following Counsel of Record:

Lauren Cafferty
McGuire Woods, LLP
2001 K Street NW, Suite 400
Washington, D.C. 20006
Telephone: (202) 857-1733
Email: lcafferty@mcguirewoods.com

Christopher Sears
Cipriani & Werner, P.C.
Laidley Tower, Suite 90
500 Lee Street E.
Charleston, West Virginia 25301
Telephone: (304) 341-0500
Email: csears@c-wlaw.com

***Counsel for Credit One Bank***

```
                    /s/
_____
```
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email:  lenbennett@clalegal.com