**The Lynn Group, Inc.**
**613 Eldrid Drive, Suite 200**
**Silver Spring, Maryland  20904-3344**
**301.275.0704**
**TheLynnGroup.net**
**JimLynn@TheLynnGroup.net**

July 7, 2016

Christopher J. Sears, Esquire
Cipriani & Werner PC
500 Lee Street East, Suite 900
Charleston, West Virginia  25301

      Re:  David William Wood v. Equifax Credit Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC, Credit One Bank, NA, and Midland Credit Management, Inc.  In the United States District Court for the Eastern District of Virginia, Richmond Division.  Civil Action No.: 3:15-CV-594 (MHL).

Dear Mr. Sears:

I have been retained as an Expert by the Law Firm of Cipriani & Werner PC, counsel for Defendant Credit One Bank, NA (the "Bank"), in the above-captioned case. Originally, you had asked me to serve as an Expert in order to review and respond to an Expert Report expected to be produced by the Expert designated by the Plaintiff.  Since no such Expert Report is forthcoming from the Plaintiff's Expert, you have now asked me to review and analyze the file of documents and information that you have furnished to me and to provide you with my findings, opinions, judgments, and conclusions with respect to the claims and allegations against Credit One Bank, NA as stated in the Complaint.  You have also asked me to respond to several questions posed by you, which I have also included in this Report.  A compilation of all documents and sources of information that I have referenced in the preparation of this Expert Report is listed in the Supplemental Information Section of this Report.  As discovery is still open, I reserve the right to supplement this Expert Report as additional information is made available to me.

I am solely responsible for the entire content of this Expert Report as well as all comments, opinions, judgments, and conclusions expressed herein. The comments, opinions, judgments, and conclusions that I express throughout this Expert Report are stated to a reasonable degree of professional certainty and are based upon my extensive experience in the financial services industry for more than 30 years.  All of my opinions are based not only on my training and experience in consumer and commercial lending, but also on my knowledge of the various federal and state

consumer protection laws and regulations that govern consumer lending practices, policies, and procedures.

Background

On or about June 10, 2013, Credit One Bank, NA, approved a $300.00 revolving credit card account for David Wood of West Point, Virginia. The Bank's records show that the credit card was activated on June 14, 2013.  The Bank's records in June 2013 also show that Mr. Wood's home address was 2115 Lee Street, West Point, Virginia 23181 and that his mailing address was Post Office Box 725, West Point, Virginia 23181-0725.

The Bank generated monthly billing statements for Mr. Wood's credit card account on or about the 15th day of each month and sent each such statement to Mr. Wood's mailing address of record.  The Bank's records show that no payments were ever received for Mr. Wood's credit card account.  The Bank's final monthly statement dated July 27, 2014 shows a total charged-off amount of $653.75, which includes $194.30 in principal and various finance charges amounting to $459.45.

On October 5, 2015, Mr. Wood filed the lawsuit referenced above.

Analysis of Complaint

The Plaintiff alleges in Counts VI, VII, and VIII of the Complaint that Credit One Bank, NA violated the Fair Credit Reporting Act.  Specifically, the Plaintiff alleges that the conduct of the Bank did not comport with Section 1681s-2(b)(1)(A) as well as sub-sections (1)(B), (1)(C), and (1)(D).

If a consumer such as Mr. Wood disputes the completeness or accuracy of any information that a furnisher of consumer credit data, such as Credit One Bank, has reported to any of the three major credit reporting agencies, Experian, EquiFax, and Trans Union, then the Bank must take the following actions pursuant to the statutory reference cited above:

(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency;
(C) report the results of the investigation to the consumer reporting agency; and
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the Bank furnished the information and that compile and maintain files on consumers on a nationwide basis.

No allegations have been made by the Plaintiff with respect to Section 1681s-2(b)(1)(E), which is as follows:

(E)  if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly:

   (i)   modify that item of information;
   (ii)  delete that item of information; or
   (iii) permanently block the reporting of that item of information.

The evidence of record shows that the Bank received six Automated Consumer Dispute Verification forms, or "ACDVs", on Mr. Wood's credit card account. The ACDV process is a standard format for a consumer data furnisher to report information on a specific consumer credit account to Experian, EquiFax, and/or Trans Union and, as such, constitutes the normal and customary industry standard for this purpose. The data furnisher confirms and/or updates consumer information and account information on each ACDV as necessary and appropriate.

A summary of the six ACDVs is as follows:

| ACDV | Response Date | Response Due Date | Bank Representative | Dispute Code | Result of Investigation |
|------|---------------|-------------------|---------------------|--------------|-------------------------|
| 1 | 07/11/2014 | 07/18/2014 | Shantell Reed | 103 | Confirm/Update |
| 2 | 04/28/2015 | 05/17/2015 | Alexandra Chu | 103 | XH |
| 3 | 04/28/2015 | 05/18/2015 | Alexandra Chu | 103 | XH |
| 4 | 05/05/2015 | 05/27/2015 | Alexandra Chu | 103 | XH |
| 5 | 06/10/2015 | 06/26/2015 | Alexandra Chu | 103 | XH |
| 6 | 06/15/2015 | 07/04/2015 | Jennifer Schmidt | 103 | XH |

- Dispute Code 103: Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID.
- Compliance Condition Code "XH" – Account previously in dispute – now resolved. Reported by credit grantor.

A summary of my findings, opinions, judgments, and conclusions on the six ACDVs is as follows:

1. The Fair Credit Reporting Act requires a data furnisher to complete its investigation within 30 days from the date the dispute was received by the credit reporting agency. In actuality, a data furnisher has less than 30 days to complete its investigation since the 30 day time period starts when the credit reporting agency receives the dispute. Nevertheless, the information stated on each of the six ACDVs indicates that each ACDV was completed by Credit One Bank in a timely manner.

2. Kim Maragos testified that she found one mistake in her review of each of the six ACDVs. The second ACDV response dated April 28, 2015 and prepared by Alexandra Chu showed that the ECOA code was changed from individual to

joint. Clearly, the Bank's records showed that Mr. Wood was an individual Borrower.

While a mistake is a mistake, the larger point is that this particular mistake was not consequential to the issues in the case. Also, the mistake was corrected by Ms. Chu on the same day in a subsequent investigation of an ACDV for Mr. Wood, which is the third ACDV listed in the table above.

3. The third ACDV listed in the table above and dated April 28, 2015 states "Provided Police Report" in the Section labeled "FCRA Relevant Information". In fact, no Police Report was provided.

In any event, in connection with this litigation, the Bank has been provided a copy of an Incident Report from the West Point, Virginia Police Department dated December 9, 2014 with two follow up entries dated March 2, 2015 and March 20, 2015. The December 9, 2014 entry refers to an in-person contact by Mr. Wood at the West Point Police Station on December 8, 2014 with L.L. Woodson. The Incident Report states that Mr. Wood learned a few months previously that someone had opened the Credit One account in his name. He further reported that no payments had ever been made on the account. Mr. Wood named his mother, Dyan Lawless, as the suspect and reported that she had moved to Florida. Prior to her moving, Mr. Wood stated that she had always picked up the mail which is why he was unaware of the Credit One account.

On December 9, 2014, Mr. Wood returned to the West Point Police Department to report that he had found a copy of the Credit One Bank billing statement for the subject credit card account dated July 15, 2014.

Mr. Wood made subsequent visits to the Commonwealth Attorney's office and to the New Kent Sheriffs' Department regarding other incidents in each of their jurisdictions. Representatives from each of these jurisdictions shared their experiences with the West Point Police Department which were documented by the Department and included in the Incident Report.

The West Point Police Department closed its investigation without taking any further action. It was the stated opinion of the West Point Police Department that Mr. Wood was only trying to induce his creditors to write off his credit card accounts.

- There is no record of Credit One Bank ever receiving a copy of the West Point Police Department Incident Report as part of any consumer credit investigation related to David Wood.
- Even if the Bank had received the Incident Report, it contains allegations that local law enforcement deemed not worthy of further investigation.
- The Bank's records show that sent an Affidavit to Mr. Wood on at least two occasions. The Bank does not have a record of a response from Mr. Wood in either instance.

- Pursuant to the Fair Credit Reporting Act, Mr. Wood always had the right to have a 100 word consumer statement inserted into his personal credit report with Experian, EquiFax, and Trans Union.

4. Both Kim Maragos and Alexandra Chu testified that the Bank was able to verify a connection between David Wood and his mailing address of Post Office Box 725, West Point, Virginia 23181. The basis of the verification was an external source known as Accurint.

   Accurint's website states that its customer base consists of over 400,000 public and private organizations with industry/lines of specialty that include law enforcement, collections, health care, insurance, law enforcement, and private investigations. The website also prominently links LexisNexis with Accurint and represents that the entity is "A direct connection to over 45 billion current public records. Detect fraud. Verify identities. Conduct investigations."

   Based upon its verification via Accurint, the Bank was able to verify that the information being reported to the CRAs was accurate and complete. In my opinion, the Bank's verifications were reasonable, appropriate, and consistent with the standard of care in the consumer data furnishing industry that data furnishers use credible external sources of information as necessary and appropriate in order to enhance the completeness of consumer credit investigations.

5. In Count VIII of the Complaint, Plaintiff alleges that Credit One Bank erred in not coding the subject credit card account as "XB" in its ongoing reporting of the account to Experian, EquiFax, and Trans Union. Compliance Condition Code "XB" states as follows: "Account information disputed by consumer under the Fair Credit Reporting Act."

   The Code "XB" indicates an active dispute that is being investigated by the data furnisher, or Credit One Bank in this case. The Code "XH" denotes that the investigation has been completed and that the information reported by Credit One Bank has been verified as accurate.

   Both the Consumer Data Industry Association Credit Reporting Resource Guide as well as the Credit One Bank Customer Service Procedure Manual indicate that "XH" is the proper and appropriate Compliance Condition Code for the subject credit card account given the circumstances as discussed throughout this Report.

6. In my opinion, the conduct of Credit One Bank, NA was compliant with Section 1681s-2(b)(1)(A) as well as sub-sections (1)(B), (1)(C), (1)(D), and (1)(E).

You have provided me a series of questions and have asked me to respond to each one. The questions and my answer to each question are as follows:

- Did Credit One have reasonable procedures in place to investigate ACDV disputes? Yes. It was clear from reading the deposition transcripts of each of the five current and former Bank employees that the Bank provided effective training and access to online resources, both proprietary as well as external resources, that would facilitate the ability of each Bank employee, including ACDV investigators, to do his or her job as efficiently and as effectively as possible. I have also reviewed the content of several manuals, including the FCRA section of Credit One Compliance Program and Policy Manual, the Fair Credit Reporting Act Compliance Guidelines section from the Credit One Bank Compliance Guidelines Manual, and the Credit One Bank Customer Service Procedure Manual for E-Oscar, ACDVs, and AUD. I found that each Manual was substantive and informative and set forth reasonable procedures to facilitate compliance with the Fair Credit Reporting Act.

- Did Credit One conduct a reasonable investigation with respect to the information disputed by Mr. Wood through the Credit Reporting Agencies? Yes as to all six investigations. In my opinion, each investigation was conducted in a manner that was consistent with the statement aside the signature line at the end of the ACDV. It reads as follows:

    "When you sign this form, you certify that you have verified the accuracy of the entire item in compliance with all legal requirements and that your computer and/or manual records will be adjusted to reflect changes noted above."

- In conducting a reasonable investigation of any such dispute, did Credit One review all relevant information provided by the consumer reporting agency? There was only one instance where an ACDV stated that a consumer credit reporting agency was providing "FCRA Relevant Information", which was stated as "Provided Police Report". As noted above, a police report was not provided.

- Did Credit One report the results of the investigation to the consumer reporting agency? Yes.

- In your opinion, should any of the Credit One investigations have resulted in a finding that the information was incomplete, inaccurate, or potentially misleading such that Credit One had a duty to report those results to all other consumers reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis? No. Again, in my opinion, each ACDV was prepared in accordance with the standard of care as expressed in the statement referenced in the second question above. The data reported has been verified as accurate.

- In your opinion, should any of the Credit One investigations have resulted in a finding that the information was inaccurate, incomplete, misleading, or not verifiable such that Credit One had a duty to report to a consumer reporting agency that the information should be modified, deleted, or permanently

blocked? No. Again, in my opinion, each ACDV was prepared in accordance with the standard of care as expressed in the statement referenced in the second question above. The data reported has been verified as accurate.

o Assuming that Credit One failed in any of its duties under the FCRA, are you able to determine any damages that Mr. Wood sustained as a proximate result of such failure? There is no evidence of any damages to Mr. Wood. Furthermore, there is no evidence on the record that would enable me to distinguish between any damages sustained by Mr. Wood among the multiple parties that are involved in this litigation.

Sincerely,

*James F. Lynn*

James F. Lynn
Principal, The Lynn Group, Inc.