IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DAVID WOOD,**

    **Plaintiff,**

v.                          No. 3:15-cv-594-MHL

**CREDIT ONE BANK, N.A.,**

    **Defendant.**

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, David Wood, by counsel, and in support of his Motion for Partial Summary Judgment, he replies as follows:

**OVERVIEW**

Credit One Bank targets credit-distressed consumers with unsolicited offers of credit through the mail and makes it very easy for accounts to be opened over the phone or Internet without ever confirming the identity of the person who opened the account. In this case, Credit One allowed an account to be opened in the Plaintiff's name without the Plaintiff's authorization or knowledge. The Plaintiff did not ask to be solicited, he did not ask for the credit, he did not bind himself in an enforceable contract, and he had no knowledge of the account until long after the account was in default.

Credit One allowed itself to be defrauded by its own marketing and solicitation practices. Ever since it learned of the fraud, instead of correcting its errors, it has sought to force the consumer-victim to bear the financial and consumer reporting consequences of Credit One's risky credit-decisions. In its opposition to the Plaintiff's motion for partial summary judgment,

1

Credit One Bank strings together a narrative of what it claims are disputes of fact sufficient to demonstrate that the Plaintiff might be liable for the credit card he never opened. Credit One Bank argues that unless a consumer can prove he didn't authorize the opening of a credit card then he will be liable for it. These facts and arguments are diversions from the analysis in which the court must engage.

In most instances, rather than outright dispute Plaintiff's stated facts, Defendant attempts only to explain why they may not matter, or to suggest alternate facts that could – in theory only – exist. But in most instances, Credit One does not itself offer a evidenced or supported basis for a denial of the putative facts here.

**ARGUMENT**

**I.     Plaintiff is entitled to partial summary judgment on three issues.**

    **A.  Credit One Bank's report that Mr. Wood opened and was responsible for its credit card account was inaccurate.**

As our courts have repeatedly explained, where – like here – the moving party has produced admissible evidence, the opposing party must provide not merely a "scintilla" of evidence (here – the suggested generic presumption of regularity in Defendant's application process). *Joyner v. O'Neil*, No. 3:10CV406, 2012 WL 560199, at *2 (E.D. Va. Feb. 21, 2012)(*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986)). Here, Defendant has offered absolutely zero evidence that Mr. Wood opened, used or authorized its account. None.

There is still no admissible evidence that Mr. Wood opened, used or was legally responsible for the Credit Plus account. Plaintiff cited Mr. Wood's deposition testimony where he stated – under oath – that he never opened, used or authorized another to open and use the Credit One account. (Pl's Mem. Support Motion Summ. J. at 2, ¶ 1)(ECF 61); (Wood Dep. Tr. 87:7-88:4)(ECF 61-1). In the face of that, Defendant proffers only what it contends are two facts

that could form a basis for its initial belief that Wood was contractually responsible. (Def's Mem. Opp'n Pl's Motion Summ. J. at 2)(ECF 68)("[A] written solicitation for a pre-approved Credit One credit card ... was mailed to David Wood"; a "[s]olicitation was fulfilled *via* Credit One's website, meaning that someone other than Credit One opened the account online."). And Defendant tried to refute other facts offered by Plaintiff. *Id*. ("Although a request was made to add an authorized user on the account, that request was made separately from the activation process. Rather, this ***inference*** is drawn by an example [Defendant's Rule 30(b)(6) witness] used in explaining how the voice verification system might work."; "[R]eference to the monthly statements themselves do [sic] not support the contention that the card was used by someone other than Wood himself.") Putting aside that Plaintiff's evidence (including Defendant's own records) establishes that the Credit One account was "activated" at the same moment in Defendant's account record that the female also sought to add herself as an authorized user, Defendant's criticism of this inference made by its Rule 30(b)(6) witness does not even count as a scintilla of support for its reporting that Mr. Wood opened the account.

Credit One continues its own confusion regarding where and how Mr. Wood would have received its communications. Defendant claims without explanation that Mr. Wood "would have had to have provided the U.S. Post Office proper identification in order to receive mail" at the Post Office Box. (Def's Mem. Opp'n at 3-4). But it does not dispute ¶¶5-8 of Plaintiff's facts establishing that Mr. Wood never owned or controlled the subject P.O. Box – it belonged to his estranged mother.

Defendant also challenges the conclusiveness of the estranged mother's admission of the alleged account fraud. (Def's Mem. Opp'n at 4-5). After all, Credit One argues, the mother's sworn "statement does not include a specific admission by [her] that she opened credit card accounts using Mr. Wood's identity" because she states only that the accounts were "'opened

3

against the will of David Wood' and that they should be 'transferred back to the rightful owner Dyan Lollis.'" (Def's Mem. Opp'n at 4). But other than this nit, Credit One has nothing else to say regarding such admission by the person who most likely opened its account. And this dearth of defense evidence is in the face of the unambiguous testimony of Mr. Wood that whoever opened Credit One's account, it was not him. (Wood Dep. Tr. 87:7-88:4).

The only other argument Defendant attempts is its reliance upon a new affidavit from the West Point officer who handled one of Mr. Wood's multiple attempts to obtain prosecution of the identity theft. Plaintiff addresses this new evidence in a separate motion. Credit One has never until now disclosed its intent to use or call Woodson as a witness in its defense. *See* Fed. R. Civ. P. 26(a)(1), 37(c)(1). Woodson did not suggest any evidence that Mr. Wood himself opened the account and in fact had told Ms. Rotkis and Mr. Bennett that the reason she did not prosecute the complaint was that she believed that Mr. Wood had stated multiple places he had lived and sought prosecution in multiple jurisdictions. Still, none of this matters. Mr. Wood did not open the account. There is no evidence to contradict his unwavering testimony, his supporting Credit One documents or the sworn statement from the estranged mother. (Wood Dep. Tr. 87:7-88:4).

Defendant is correct that Mr. Wood's lawsuit and Credit One's liability is based on its violation of 15 U.S.C. § 1681s-2(b). In order to prevail, Plaintiff must demonstrate that Credit One Bank violated its obligation under 15 U.S.C. § 1681s-2(b)(2) to conduct a reasonable investigation of the Plaintiff's disputes to the consumer reporting agencies. However, whether its reporting of the account was accurate is a threshold element in determining whether the credit furnisher violated this provision. *Alabran v. Capital One Bank*, No. CIV.A. 3:04CV935, 2005 WL 3338663, at *8 (E.D. Va. Dec. 8, 2005); *Johnson v. MBNA Am. Bank, N.A.*, 357 F.2d 426, 429 (4th Cir. 2004). Defendant itself repeatedly states as much. (Def's Mem. Opp'n at 16).

("Of course, it stands to reason that if the account was accurately reported, then no violation of the FCRA can be found to exist"; "Absent a showing of actual inaccuracy on a reinvestigation, a plaintiff's claim fails as a matter of law.") Either as an element of liability or a necessary component of damages, the Plaintiff needs to show that the information that Defendant was reporting about him was inaccurate, incomplete or could not be verified, and thus should have been deleted at the time Credit One received his disputes from the credit reporting agencies.

Defendant is correct in its conclusion that § 1681s-2(a) does not provide a private right of action. But Plaintiff is not claiming that Credit One is liable merely because it furnished inaccurate reporting. Instead, Credit One is liable under § 1681s-2(b) because of how it handled and responded to Plaintiff's disputes of inaccurate reporting.

Credit One also asserts that its belief that the account belonged to Mr. Wood was in "good faith." When Defendant first started its credit reporting - maybe so. And Plaintiff is not claiming that Defendant's initial formation of the account was actionable. Instead, this argument on summary judgment is simply that whether or not the Defendant's initial belief was in good faith, it was wrong. Mr. Wood did not open and use the account.

In its opposition to the Plaintiff's motion for partial summary judgment, the Defendant argues that Virginia law allows for the formation of a contract by electronic signature. (Def's Mem. Opp'n at 2.) The provision cited by Defendant, Va. Code Ann. § 59.1-485, provides:

> a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
> (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.
> (c) If a law requires a record to be in writing, an electronic record satisfies the law.
> (d) If a law requires a signature, or provides for certain consequences in the absence of a signature, an electronic signature satisfies the law.

Of course a contract formed electronically or with an electronic signature may be is enforceable in Virginia. The Plaintiff does not argue otherwise. Instead, Mr. Wood argues it is

5

unenforceable because he did not enter into the contract by accepting Credit One's terms, either on paper, by phone or electronically.  The mere fact that the credit card was activated electronically pursuant to Credit One's lax policies doesn't fulfill the requirements of contract formation.  According to the Defendant, someone other than Credit One activated the unsolicited offer via the Internet.  Even in opposing the Plaintiff's motion for summary judgment, the Defendant can't say it was Mr. Wood who opened the account.  Rather than indicia of the formation of an enforceable contract, the fact that the unsolicited mail offer directed to a distressed consumer was anonymously opened, maxed out and immediately defaulted are all indicators of a fraudulent account.  The Defendant lacked measures to ensure the identity of the person opening the account electronically was indeed Mr. Wood.

The provision of Virginia law allowing for formation and endorsement of contracts to be made electronically doesn't replace Virginia's law of contracts or credit card issuance. *Howell v. Kelly Servs., Inc.*, No. 1:12-CV-821, 2015 WL 2070348, at *3 (E.D. Va. May 1, 2015), appeal dismissed, 627 F. App'x 229 (4th Cir. 2015)(explaining that a contract is formed when the offeree communicates acceptance to the offeror); Va. Code Ann. § 6.2-425 (a consumer who did not request a credit card is not liable for its use.)  Defendant wholly ignores Plaintiff's recitation of Virginia and Federal law regarding proof of responsibility for a credit card debt.  Even now – years after Mr. Wood first disputed the account and many months after this federal lawsuit began, Credit One still cannot offer a single document that Mr. Wood signed, a single instance where he used the credit card, or a single witness to support Credit one's assertion and reporting of Wood's indebtedness.  This burden is in fact the creditors.  And it is a legal question that necessarily has to be made by the Court, rather than a lay jury.

Neither Virginia nor federal law require a consumer to prove to a creditor that he isn't liable for a disputed account.  Defendant has pointed to no requirement that a consumer supply a police

report or special affidavit to correct a fraudulent account. In fact, both Virginia and federal law place the burden of demonstrating that a consumer is responsible for an account squarely on the creditor. Va. Code Ann. § 6.2-425; 15 U.S.C.A. § 1643. The Fair Credit Reporting Act doesn't require any special evidence for consumers to dispute the accuracy of an item on their credit report and for the furnisher to conduct a reasonable investigation under the FCRA. The Plaintiff testified that he called and wrote to Credit One on numerous occasions, and that Credit One knew that his dispute was that he had not opened the account. The Defendant claims to have sent Mr. Wood a fraud affidavit in response to his direct contacts, which reasonable inference is that Mr. Wood communicated that the account was fraudulently opened – although he may not have known how or by whom. (Def's Mem. Opp'n at 5)(ECF 68-1). Credit One admits that Mr. Wood contacted it directly at least four times to directly dispute the fraudulent account. (Def's Mem. Opp'n at 5.) In fact, Credit One's fact witnesses confirmed direct disputes by telephone wherein Credit One's internal notes indicate that Mr. Wood reported that an account was fraudulently opened in his name at least three times. (ECF 68- 3)(Maragos Dep. Tr. 16:6-17:24).

Defendant argues that Mr. Wood didn't dispute the account using the right language and that he did not supply information it deemed necessary to correct the fraudulent account when directly disputed, such as obtaining a police report and a special affidavit of fraud. (ECF 68-2, at 48-50.) Mr. Wood requested validation for an "unsubstantiated account" and "unvalidated account," he also asked for a detailed audit and indicated that the information Credit One Bank was reporting was "personally harmful institutional error." *Id*. He is not sophisticated, but provided enough information in his letters, coupled with his phone calls, for Credit One Bank to know that he had a *bona fide* challenge to the authenticity of the account.

Finally, the Defendant argues that *Alabran* is not on point because the plaintiff there sought summary judgment on accuracy in order to prove a claim of defamation. (Def's Mem. Opp'n at

15); *Alabran v. Capital One Bank*, No. CIV.A. 3:04CV935, 2005 WL 3338663, at *8 (E.D. Va. Dec. 8, 2005). *Alabran* **was** a FCRA case brought under the same section as at bar. In *Alabran*, the court granted partial summary judgment in favor of the plaintiff, finding that (1) he was not obligated the account and (2) the defendant had forwarded inaccurate information to the CRAs. 2005 WL 3338663, at *8. Like *Alabran,* the Plaintiff in this case has demonstrated that he is not obligated on the account. In *Alabran*, the plaintiff was an authorized user, and although he had used and made payments on the account, had never entered into an agreement with the creditor that obligated him on the account. In this case, the Plaintiff has demonstrated that he is not obligated on the account that was fraudulently opened by someone else.

For these reasons, the Court should grant the Plaintiff's motion for partial summary judgment that Credit One Bank furnished inaccurate information about him related to the fraudulent account.

**B. No reasonable jury could find that Credit One conducted a reasonable investigation.**

The Defendant has argued that its policies and procedures provide for a detailed investigation of fraud allegations by consumers. (ECF 68-4). However, the reality is wildly different for Credit One Bank's actual ACDV investigators who testified that they never followed any such procedures. (ECF 68-11). Each ACDV operator testified consistently, when the dispute code is identity theft or fraud, all they do is confirm the "complete i.d." This consists solely of matching four items of identifying information. When the items of information match, no further inquiry is made. And in Mr. Wood's case specifically, when the items matched no further inquiry was ever made into his actual dispute that the account was fraudulently opened, no matter how many times he disputed the information.

When conducting an ACDV investigation regarding identity theft, for instance, Alex Chu testified consistent with the other fact witnesses that she:

1) Verifies only the identifying information associated with the account such as name, date of birth, address and social security number (Chu Dep. Tr. 38:3-39:15).

2) If none of the information matched what was in Credit One's system, Chu would conduct more investigation to find other ways to determine if the cardholder had the account (Chu Dep. Tr. 39:2-40:10).

3) If the ACDV investigator found that the identifying information matched, she would hold the consumer responsible. (Chu Dep. Tr. 39:24-41:5).

4) Chu processed 80-100 ACDVs per day, spending five to six minutes on each investigation. (Chu Dep. Tr. 41:18-23).

5) When she received an ACDV for Mr. Wood with dispute code 103, meaning identity fraud, and to "provide or confirm complete i.d." To do this, she verified that the identifying information of name, address, date of birth and social security number from the CRAs matched the identifying information in Credit One's system. Once that was a match, Chu verified that Mr. Wood was liable on the account and supplied the compliance condition code XH, meaning that she completed the ACDV and found the consumer was responsible for the account. (Chu Dep. Tr. 69:1-76:24).

6) If a consumer sent in a subsequent dispute after the ACDV investigator determined that the consumer was responsible, the ACDV investigator took no further action to investigate the dispute except to confirm the identifying information. (Chu Dep. Tr. 101:9-16).

Despite knowing that *Johnson v. MBNA* established that a furnisher must conduct a searching inquiry, Credit One still only matches the ACDV information from the CRA against information in its system and it does not conduct and actual § 1681s-2(b) investigation. Even though Credit One nominally consults external databases, it only does so to confirm the same, meaningless verification of the consumer victim's name, address, social security number and date of birth. The so-called investigation conducted by Credit One Bank is nearly identical to that used by the defendant in *Robertson v. J.C. Penney Co.*, where the court granted summary judgment. CIV.A. 2:06CV3KSMTP, 2008 WL 623397 (S.D. Miss. Mar. 4, 2008). The Court there explained it was not a question to be left for the jury when there was only verification of identity and "no investigation of the disputed claim at all." In this case, there is no dispute of fact regarding the investigation done by Credit One, and thus summary judgment in Plaintiff's favor is proper. *Id; see also Hinkle v. Midland Credit Mgmt., Inc.*, No. 15-10398, 2016 WL 3672112, at *6 (11th Cir. July 11, 2016).

Despite Defendant's assertions of various undisclosed "corporate policies and guidelines which dictate that they conduct a reasonable investigation utilizing the materials that were provided in the ACDV," Defendant does not deny or provide factual support in dispute of Plaintiff's proof that Credit One does not and did not look beyond the internal data it already had in its computer – that its account was opened using an address at which Mr. Wood had in the past been associated. And however Defendant claims that its employees are trained, there is no dispute as to what was done to investigate the consumer's disputes in this case.

Similarly, though Credit One cites to the record in its brief regarding the ACDV investigations by his employees, it does not and cannot dispute that the only thing they did – if

anything at all – was to confirm that the address Defendant listed for the account had at some point in time been associated with Mr. Wood. That is literally it.[1]

Defendant complains that Mr. Wood did not provide it a police report. But this is not an element of a §1681s-2(b) claim nor a requirement for a consumer making such a dispute. This is especially important to note where as here the local police department refuses to conduct an investigation and provide such a report.

Lastly, Defendant's principal position is that the consumer who makes a dispute must actually affirmatively prove the lack of his obligation on a credit account before the furbisher must correct its reporting. But the burden is actually the reverse. A consumer is not obligated to disprove the existence of a debt – to prove he did not make charges on a Credit One account. If Credit One could not prove the Plaintiff's liability, it could not accurately have reported the account as "verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004).

### C. Credit One violated § 1681s-2(b) (1)(C) by refusing to accurately report that the account was disputed by the consumer and that the account could not be verified.

This case is also an example of the reason that § 1681s-2(b)(1)(C)'s duty to "report the results of the investigation to the consumer reporting agency" includes the obligation under § 1681s-2(a) "that furnishers have a general duty to provide accurate and complete information" to the CRAs when responding to an ACDV or request for investigation. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149-50 (4th Cir. 2008). Credit One's reporting that the dispute was resolved is misleading and inaccurate because it does not accurately report back to the CRAs all that it actually knew about the challenged account, including that there was a

---

[1] Defendant now for the first time argues that it may not have received all of the documents available to the consumer reporting agencies. (Def's Mem. Opp'n at 13). But the ACDVs themselves confirm that Credit One received and read the images of the Wood disputes. (ECF 60-4, at 1-13). Regardless, Defendant does not dispute that it fully understood what Mr. Wood was disputing.

*bona fide* dispute of the account. When there is a *bona fide* dispute on the account, the CRAs will delete or suppress the information, which will provide protection for the consumer even when the furnisher refuses to conduct an investigation such as Credit One in this case.

The testimony in this case demonstrates when Credit One receives an ACDV with the 103 dispute code, it implements a perfunctory verification and it does so only one time. If a subsequent dispute comes in, the ACDV operators verify and take no further action. The completion of the perfunctory task, to Credit One, closes the dispute. The testimony of the ACDV operators shows that they did no investigation of the actual dispute, that Mr. Wood did not open the account in question, and therefore the account could not be verified. *Hinkle v. Midland Credit Mgmt., Inc.*, No. 15-10398, 2016 WL 3672112, at *7 (11th Cir. July 11, 2016). The *Hinkle* court adopted the reasoning in *Johnson*, where the furnisher "d[id] not look beyond the information contained in the [data file] and never consult[ed] underlying documents such as account applications" *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004). The Fourth Circuit found these facts actionable when the bank reported to the CRA that the disputed information was "verified." Given the lack of proof of the underlying obligation, the furnisher should have "at least informed the credit reporting agencies that [it] could not conclusively verify" the disputed information. *Id.* Plaintiff has already detailed the established law in this regard. *See Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149-50 (4th Cir. 2008); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009); *Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014).

Defendant's only real dispute is its claim that it properly used the Compliance Condition Code "XH." But this code plainly applies only where the "Account [was] previously in dispute – now resolved, reported by data furnisher." It is undisputed that Mr. Wood's dispute was never resolved. Not even now.

12

Thus Plaintiff has demonstrated through Credit One's own fact witness testimony that he is entitled to partial summary judgment because Credit One's investigation "results" are actually false and it knows it. Credit One obviously knew that the debt remained in dispute and it knew that it had not "verified" that the account belonged to Mr. Wood. Credit One knew that it had closed the investigation but had not resolved the dispute, nor would it ever resolve the dispute since it would not conduct any investigation of subsequent disputes received from any CRA.

## CONCLUSION

For the reasons stated herein, Plaintiff asks the Court to enter Partial Summary Judgment against Credit One and reserve for trial only the questions of damages and willfulness.

Respectfully,

/s/
Susan M. Rotkis, VSB 40693
Leonard A. Bennett, VSB 37523
Craig C. Marchiando
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
srotkis@clalegal.com
lenbennett@clalegal.com
craig@clalegal.com
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September 2016, I served a true and correct copy of the foregoing document by filing it in the CM/ECF system, which will electronically notify (NEF) the following:

| | |
|---|---|
| Lauren Marie Cafferty | Christopher James Sears |
| McGuireWoods LLP (DC) | Cipriani & Werner PC |
| 2001 K Street NW | 400 Tracy Way |
| Suite 400 | Suite 110 |

| | |
|---|---|
| Washington, DC 20006-1040 | Charleston, WV 25311 |
| Email: lcafferty@mcguirewoods.com | Email: csears@c-wlaw.com |

                                                     /s/_____
Susan M. Rotkis, VSB 40693
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
srotkis@clalegal.com