IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

**DAVID W. WOOD,**

**Plaintiff,**

v.                                                                   **Civil Action No. 3:15cv594**

**CREDIT ONE BANK,**

**Defendant.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Plaintiff David W. Wood's Motion for Partial Summary Judgment, (ECF No. 55), Defendant Credit One Bank's ("Credit One") Motion for Summary Judgment, (ECF No. 57), and Wood's Motion to Exclude Testimony and Opinions of James Lynn (the "Motion to Exclude"), (ECF No. 56).  Credit One's Motion for Summary Judgment and Wood's Motion for Partial Summary Judgment were both filed pursuant to Federal Rule of Civil Procedure 56.[1]  Wood's Motion to Exclude was filed pursuant to Federal

---

[1] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

(a) **Motion for Summary Judgment or Partial Summary Judgment.**  A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

1

Rule of Evidence 702[2] and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993).[3]  Wood and Credit One have both responded to the motions for summary judgment, and

both parties have replied.  (ECF Nos. 67, 68, 70, 71.)  Credit One responded to the Motion to

Exclude, (ECF No. 66), and Wood replied, (ECF No. 69).  The Court heard oral argument on all

matters and ordered supplemental briefing, (ECF Nos. 78, 80).[4]  These matters are ripe for

disposition.  The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331[5] and 15 U.S.C.

---

[2] Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and[,]
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

[3] *Daubert* held that, although "'[g]eneral acceptance' [in the scientific community] is not a necessary precondition to the admissibility of [expert testimony] under the Federal Rules of Evidence , . . . the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. at 597.

[4] On the same day, the Court heard oral argument on a different motion:  Wood's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37(c)(1), (ECF No. 72).  The Court will rule on that matter in a separate decision.  During the hearing, however, the Court, *sua sponte*, inquired about a different discovery defect in Credit One's discovery responses—a defect that Wood had not raised.  The Court will speak to that violation, namely the failure to properly swear to and sign interrogatory responses, later in this opinion.

[5] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

§ 1681p.[6] The Court entered an Order ruling on all motions. (ECF No. 86.) For the reasons that follow, the Court denied Credit One's Motion for Summary Judgment, granted Wood's Motion for Partial Summary Judgment, and granted Wood's Motion to Exclude.

## I. Factual and Procedural Background

### A.    Procedural History

Wood filed his eight-count Complaint against Credit One, Midland Credit Management, Equifax Credit Information Services, LLC, Experian Information Solutions, Inc., and TransUnion, LLC, alleging violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et seq.* Only Credit One remains as a defendant, and Wood asserts only three counts of the Complaint against it. (*See* ECF Nos. 31, 40, 41, 44.) The gravamen of Wood's Complaint is that someone improperly opened a Credit One credit card account (the "Account") in Wood's name, and Credit One, despite numerous notifications from Wood that the Account was not his, failed to correct the error and continued to report the Account derogatorily on his credit report. Wood's Complaint alleges that Credit One violated the FCRA in the following ways:

**Count VI:**     Credit One failed to fully and properly investigate Wood's disputes, in violation of 15 U.S.C. § 1681s-2(b)(1)(A);[7]

**Count VII:**    Credit One failed to review all relevant information provided by the consumer reporting agencies ("CRAs") upon receiving Wood's disputes, in violation of 15 U.S.C. §1681s-2(b)(1)(B);[8] and,

---

[6] "An action to enforce any liability created under [15 U.S.C. § 1681] may be brought in any appropriate United States district court, without regard to the amount in controversy . . . ."

[7] Section 1681s-2(b)(1)(A) provides that, "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A).

[8] Section 1681s-2(b)(1)(B) provides that, "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer

**Count VIII:** Credit One failed to correctly report the results of an accurate investigation to each CRA, in violation of 15 U.S.C. §§ 1681s-2(b)(1)(C)&(D).[9]

Wood alleges that each violation was willful, rendering Credit One liable for punitive damages pursuant to 15 U.S.C. § 1681n,[10] and pleads alternatively that Credit One's violations were negligent, entitling him to recover under 15 U.S.C. § 1681o.[11] For each count, Wood seeks actual damages, statutory damages, punitive damages, pre- and post-judgment interest, and costs and attorneys' fees.

Wood has moved for partial summary judgment. Wood urges this Court to: (1) grant summary judgment in his favor on Count VI, that Credit One failed to conduct a reasonable investigation of Wood's disputes; (2) grant summary judgment in his favor on Count VIII, that Credit One failed to truthfully report the results of its investigation back to the CRAs; and, (3) find that Credit One inaccurately reported that Wood opened and was responsible for the

---

reporting agency, the person shall . . . review all relevant information provided by the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1)(B)

[9] Section 1681s-2(b)(1)(C)&(D) provides that

[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . (C) report the results of the investigation to the consumer reporting agency[, and] (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis[.]

15 U.S.C. § 1681s-2(b)(1)(C)&(D).

[10] Under 15 U.S.C. § 1681n, a consumer is entitled to recover statutory or actual damages, punitive damages, and costs and attorney's fees if the statute was willfully violated. 15 U.S.C. § 1681n.

[11] Under 15 U.S.C. § 1681o, a consumer is entitled to recover actual damages and costs and attorney's fees if the statute was negligently violated. 15 U.S.C. § 1681o.

Account, which applies to Counts VI, VII, and VIII. Wood does not seek summary judgment on Count VII.

Credit One has moved for summary judgment on all counts. Credit One asserts that the Court should grant summary judgment because: (1) Wood cannot show actual damages as a result of Credit One's investigations; and, (2) Wood cannot show that Credit One knowingly and intentionally committed an act in conscious disregard of his rights. According to Credit One, because Wood can prove neither actual damages nor a willful violation of the FCRA, the Court must grant Credit One summary judgment and dismiss Wood's Complaint.[12]

## B. Procedural Defects Within the Motions Before the Court

Before and during oral argument, procedural defects in some filings became evident. Because the flaws within some motions and supporting briefs affect this Court's evaluation of the case, the Court pauses to discuss them.

### 1. Credit One Failed to Comply with Local Rule 56(B)

In defiance of this Court's Local Civil Rule 56(B),[13] Credit One's Memorandum of Law in Support of its Motion for Summary Judgment omits a section citing to the material facts not in

---

[12] A plaintiff alleging a violation of the FCRA must prove either actual damages and a negligent violation of the FCRA to recover under 15 U.S.C. § 1681o, or a willful violation of the FCRA under 15 U.S.C. § 1681n, which requires no actual damages and entitles a plaintiff to statutory damages.

[13] Local Civil Rule 56(B) provides, in pertinent part:

Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute.

Local Civ. R. 56(B).

dispute. Credit One instead scatters citations to the record throughout its memorandum, absent any reference to whether the facts are material or in dispute.

In his response in opposition, Wood strongly objects to Credit One's approach. Wood denounces Credit One's summary judgment motion as stepping over more than procedural boundaries. According to Wood, Credit One's avowals that Wood has no case because he cannot prove either actual damages or willfulness—without citing disputed or material facts per this Court's rules—amounts to an improper trial brief demanding that Wood "[p]rove [his] case now." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 1–2.)

Despite Wood's challenge—and Credit One's clear failure—Credit One made no attempt to remedy its violation of this Court's Local Rules. Instead, in a short statement in its reply brief, Credit One sought forgiveness for its "noncompliance" with Local Civil Rules. Credit One acknowledged that "a court's response to a violation of the Local Rules generally varies in proportion to the seriousness of the violation," and that a court "may deny a motion for summary judgment outright" when a "movant's violation of Local Rule 56(B) is blatant." (Def.'s Reply 2.) It then added the following non-sequitur: "[G]iven the short 10-page length of Credit One's brief, [its failure to present the undisputed facts] should not, in any real sense, impede this Court's ability to fairly and expeditiously consider Credit One's motion." (*Id.* at 1, 3.) Credit One further asserted that its "brief in support of its motion for summary judgment contains the appropriate and sufficient citation to the record to support the requested ruling." (*Id.* at 2.)

Credit One's self-assurance is misplaced. Courts in the Eastern District of Virginia, including this one, weigh adherence to procedural rules seriously. "In response to a movant's blatant violation of Local [Civil] Rule 56(B), the Court may deny a motion for summary judgment outright." *CertusView Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13cv346,

2015 WL 4717256, at *4 (E.D. Va. Aug. 7, 2015) (citing *Mitchell v. Angelone*, 82 F. Supp. 2d

485, 487 (E.D. Va. 1999)).  "[F]or more minor violations of Local [Civil] Rule 56(B), courts

sometimes will refuse to 'elevate form over substance' and, instead, will excuse the party's

failure to comply with the rule." *Id.* (quoting *White v. Golden Corral of Hampton, LLC*, No.

4:13cv27, 2014 WL 1050586, at *3–4 (E.D. Va. Mar. 14, 2014)).  On the other hand, as Credit

One acknowledged, "the Court has the inherent equitable authority to 'resolve the substantive

issues raised and alleviate the need to consider them at trial.'"  *Id.* (quoting *Williams v. Gradall

Co.*, 990 F. Supp. 442, 444 (E.D. Va. 1998)).

> Local [Civil] Rule 56(B) serves two salutary purposes.  It notifies non-moving
> parties of the facts that the movant contends are undisputed and support the
> movant's alleged entitlement to judgment as a matter of law, and it provides the
> Court with an organized analytical framework to assess whether any material
> factual dispute exists and whether the movant is entitled to the relief sought.  A
> party that ignores Local [Civil] Rule 56(B) undermines those dual purposes and
> impedes the Court's ability to fairly and expeditiously resolve a motion for
> summary judgment.

*Id.* at *5.

Overall, the policy behind Local Civil Rule 56 counsels enforcement of and strict

adherence to the Rule by the courts.  "[W]hile a court occasionally may forgive a litigant for

failing to strictly comply with mere procedural formalities in the Local Rules, a violation of

Local [Civil] Rule 56(B) lies at the more serious end of the spectrum of noncompliance . . . ."

*Id.*

Credit One's original error, and its failure to mitigate its error, offends on many grounds.

First, Credit One's ten-page brief in support of its Motion for Summary Judgment stands in stark

contrast to hundreds of pages of evidence, including partial transcripts of seven depositions,

submitted by the parties. (*See* ECF Nos. 55–71.)  A summary judgment motion with such an

extensive record requires the parties to adhere to Local Rule 56(B) with special care.  *See*

*CertusView Techs., LLC*, 2015 WL 4717256, at \*5 (stating that an important purpose of Rule 56(B) is to provide the Court with "an organized analytical framework to assess whether any material factual dispute exists and whether the movant is entitled to the relief sought"). Neither party can unilaterally ignore rules based on its own view of what the Court needs in order to decide a case. Not without consequence, at least.

Second, Credit One "mitigates" its error in a wholly improper manner. In its reply, Credit One lists the number of every paragraph except paragraph two in Wood's statement of undisputed facts, and declares that Credit One "disputes" it.[14] However, Credit One offers a *factual basis* for its dispute as to only one of those paragraphs: paragraph thirteen. As to nine other paragraphs, Credit One proffers a legal dispute, discussed later, that borders on spurious. And Credit One offers *no* basis for its dispute of the twenty-five other paragraphs from Wood's statement of undisputed facts. Finally, Credit One shuns citation to any of the seven depositions or hundreds of pages of evidence in the record. This pro forma set of denials might serve as a textbook example of what Local Rule 56(B) seeks to prohibit.

Credit One's violation, and its "correction" compounding its first error, plainly rest at the "more serious end of the spectrum of non-compliance" with Local Rule 56(B). *See CertusView Techs., LLC*, 2015 WL 4717256, at \*5. This Court could deny Credit One's Motion for Summary Judgment outright. *See id.* Or this Court could strike Credit One's "disputes"

---

[14] This practice, of course, also spurns Local Civil Rule 56(B), which requires that the "brief in *support* of a motion for summary judgment" include a section listing the undisputed material facts, and the "brief in *response* to such a motion" include a section listing material facts as to which a genuine dispute exists "*and citing to parts of the record relied on* to support the facts alleged to be in dispute." Local Civ. R. 56(B) (emphases added). Credit One's failure to list undisputed material facts in the first instance is not alleviated by submitting a brief that, in essence, treats Wood's response to its own motion for summary judgment as the initial motion for summary judgment, disputing facts without citations to the record. Not only does Credit One fail to support its factual assertions, Credit One appears to forget that *it* bears the burden on *its own* motion for summary judgment.

altogether and consider all of Wood's facts undisputed. *See* Local Civ. R. 56(B). While extreme, such sanctions would not seem unwarranted given Credit One's failure to even attempt a proper correction of its failure.

### 2. Credit One Also Failed to Comply With Federal Rule of Civil Procedure 33(b)(5)

During oral argument and in briefing, Credit One relied on its interrogatory responses in support of its own Motion for Summary Judgment and in opposition to Wood's Motion for Partial Summary Judgment. Pursuant to Federal Rule of Civil Procedure 56, a party asserting that a fact either cannot be or is genuinely disputed must support the assertion by, *inter alia*, "citing to particular parts of materials in the record, including depositions, . . . interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). If a party fails to properly support an assertion of fact or address another party's assertion of fact under Rule 56(c), the Court may:

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or[,]
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Federal Rule of Civil Procedure 33 articulates several requirements for answering interrogatories properly. First, interrogatories must be answered "by the party to whom they are directed," but "if that party is a public or private corporation, . . . by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1). Second, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). And finally, "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5).

"[U]nsworn, unsigned answers to interrogatories do not meet the requirements of F[ederal] R[ule of] Civ[il] P[rocedure] 56(e)," now Rule 56(c)(4).[15] *Roberts v. Gen. Elec. Co.*, 1 F.3d 1234, at *1 n.3 (4th Cir. 1993) (unpublished table opinion) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992)). When ruling on a motion for summary judgment, a district court may properly decline to consider a party's interrogatory responses when the responses "were not properly attested." *Kincaid v. Anderson*, 681 F. App'x 178, 181 (4th Cir. 2017) (holding that the district court "did not abuse its discretion" by refusing to consider a plaintiff's improperly attested responses to interrogatories when ruling on the defendants' motions for summary judgment).

Rule 33's provision allowing interrogatories directed to a corporate party to be answered "by any officer or agent, who shall furnish such information as is available to the party," Fed. R. Civ. P. 33(b)(1)(B), "has been uniformly construed to authorize 'answers by an attorney' for the party." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 508 (4th Cir. 1977) (citing 8 Wright & Miller, Federal Practice & Procedure § 2172; *United States v. 42 Jars More or Less, Bee Royale Capsules*, 264 F.2d 666, 670 (3d Cir. 1959); *Fernandes v. United Fruit Co.*, 50 F.R.D. 82, 85–86 (D. Md. 1970)). However, when an attorney signs for a corporate client, the attorney must "make[] oath that to the best of his [or her] knowledge, information[,] and belief[,] the answers

---

[15] In 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. During that revision, subdivision (c)(4) was added to "carr[y] forward some of the provisions of former subdivision (e)(1)." *Id.* Before the 2010 amendments, Rule 56(e)(1) governed affidavits, and required that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).

Current Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

are true and contain all information . . . available to the corporation on the interrogatories [that] are being answered." *Fernandes*, 50 F.R.D. at 86.

After reviewing Credit One's Responses to Plaintiff's Interrogatories, the Court observed that no officer or agent had sworn to the interrogatory responses and that no such oath by an attorney had been made. Although the attorney for Credit One had electronically signed the responses, no oath, affirmation, or verification accompanied the signature—as required by the Federal Rules. In response to questioning by the Court during oral argument about whether Credit One properly signed and swore to its interrogatories as required by Federal Rule of Civil Procedure 33, Credit One could offer no definite answer. The Court granted it leave to file a statement clarifying the record.[16] Credit One then filed "Defendant Credit One Bank, N.A.'s Statement Regarding Verification of Interrogatories" (the "Statement"). (ECF No. 77.) In its Statement, Credit One acknowledged that it "did not execute a verification" of its interrogatories," but that "Credit One provided answers to the interrogatories and fully participated in the drafting of the responses [and, w]ith leave of Court, Credit One stands prepared to remedy its oversight and submit a verification of its responses." (Statement 1.)

As it did regarding its failure to abide by Local Rule 56(B), Credit One appears to seek forgiveness for "noncompliance," without repercussion to it for failing to follow Rule 33. Credit One takes this stance bereft of factual or legal rationale as to why this Court should—or can—allow verification of interrogatory responses so grossly out of time, or why this Court should consider, in ruling on the pending motions for summary judgment, interrogatory answers that do not meet the requirements of Federal Rule of Civil Procedure 56. Credit One did not file a

---

[16] During the hearing, counsel for Wood stated that they were "not disputing" whether the interrogatories had been properly sworn to and signed as required by Rule 33. (Oct. 18, 2016 Tr. 27, ECF No. 85.)

motion for leave to file discovery responses out of time or to supplement the summary judgment record. Had it done so, Credit One might have recognized the need to explain why verification should be allowed more than two months after discovery closed, and even further beyond the time responses were due.[17]  Credit One cited no procedural or substantive law allowing this late verification to occur, nor did Credit One represent whether Wood objected to the belated supplementation of the record. Credit One did not even attempt to suggest good cause for its error. Credit One's statement that it "stands prepared to remedy its oversight" leaves nothing for this Court to rule on. No motion pends. As with the approach it took toward Local Rule 56(B), Credit One's failure to invoke the rules or law in addressing its own lapse layers a second failure on top of the first.

Because "unsworn, unsigned answers to interrogatories do not meet the requirements of F[ederal] R[ule of] Civ[il] P[rocedure 56(c)(4)]" *Roberts*, 1 F.3d 1234, at *1 n.3, the Court will not consider Credit One's interrogatory responses in ruling on Credit One's Motion for Summary Judgment or Wood's Motion for Partial Summary Judgment.[18]  Regardless of Credit One's assertion that it "stands prepared to remedy its oversight," the Court will not consider, in a

---

[17] This also would have given Wood an opportunity to object to any relief Credit One requested.

[18] The assertions in Credit One's responses to Wood's interrogatories related to Credit One's information connecting Wood to the Account. Specifically, Credit One's Responses to Interrogatories contained the following information not included elsewhere in the record. Credit One had a "good faith belief that [Wood] became liable to Credit One on [the Account] as of June 4, 2013." (Def.'s Resp. to Pl.'s Interrogs. 4(a), ECF No. 68-1.) Credit One based that belief on the following: (1) Wood was sent the solicitation; (2) "it appeared that [he] fulfilled the application online through Credit One's website," during which process "Credit One was provided with information" which purported to identify Wood as the person fulfilling the application; (3) the card was mailed to the address Credit One had for Wood; and, (4) although the card was reported lost/stolen and at least two Affidavits of Fraud were mailed to Wood at addresses he provided to Credit One, Credit One never received any completed affidavit. (*Id.* at 4(c)(i)–(v).)

summary judgment motion, the content of interrogatories that "were not properly attested," *see Kincaid*, 2017 WL 838271, at *4.

This sanction falls short of those available to the Court for Credit One's flagrant violation of Local Civil Rule 56(B) and subsequent failure to attempt to remedy its initial violation. As discussed, Credit One layered multiple errors onto this summary judgment record, meaning that the Court could deny Credit One's Motion for Summary Judgment outright. *See, e.g., CertusView Techs., LLC*, 2015 WL 4717256, at *4 ("In response to a movant's blatant violation of Local [Civil] Rule 56(B), the Court may deny a motion for summary judgment outright."). Still, the Court finds that a more limited consequence serves the interest of justice and complies with requirements of the federal and local rules.

Although Credit One's violation "impedes the Court's ability to fairly and expeditiously resolve [Credit One's] motion for summary judgment," *id.* at *5, the Court will exercise its "inherent equitable authority to 'resolve the substantive issues raised and alleviate the need to consider them at trial,'" *id.* at *4 (quoting *Williams v. Gradall Co.*, 990 F. Supp. 442, 444 (E.D. Va. 1998)). The Court will consider the merits of both Credit One's and Wood's motions for summary judgment.[19] In any event, as apparent below, when the Court considers the entirety of the record before it, not just the parts of the record cited by the parties, *see* Fed. R. Civ. P. 56(c)(3) ("The court [ruling on a motion for summary judgment] need consider only the cited

---

[19] Wood filed a separate Motion for Sanctions, (ECF No. 72). The Court will address Wood's Motion for Sanctions in a separate Memorandum Order issued today. (*See* ECF No. 91.) Wood's Motion for Sanctions pertains to allegedly improper witness disclosure, not to the Rule 33 or Rule 56 failures discussed here. In his Motion for Sanctions, Wood objects to what he claims were improperly belated disclosures of two witnesses: Sergeant L.L. Woodson of the West Point Police Department and Karen Schumacher, the records custodian for the West Point Police Department. For the reasons articulated in that decision, the Court will deny Wood's Motion for Sanctions.

materials, but it may consider other materials in the record."), the outcome of these motions likely would not change regardless of the sanction imposed.

### C. Factual History[20]

#### 1. The Account

On June 11, 2013, "upon receiving [an] application," Credit One opened the Account. (Maragos Dep. 19, ECF No. 68-3.) The "Applicant Information" included the name "David Wood," a mailing address of PO Box 725 in West Point, Virginia,[21] a phone number of (804) 843-4080, and a primary e-mail address of "dyanlollis@ymail.com."[22] The applicant information also included a social security number and date of birth. On June 14, 2013, the Account was activated by a telephone call to Credit One's automated voice response system. That same day, Credit One received a request to add an authorized user to the Account. Credit One did not add the authorized user because the voice that had been recorded requesting the authorized user "was not recognized to be one that would match the [A]ccount details."[23]

---

[20] In recounting the factual history, the Court sets forth the undisputed facts as set forth in the parties' briefing on both motions for summary judgment and the record submitted to the Court. In ruling on each motion for summary judgment, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). At this stage, however, the Court merely sets forth the undisputed facts.

[21] Wood testified that he received mail at this address, but that he had problems receiving mail, meaning that he "would be expecting mail [and] would not receive it." (Wood Dep. 24–25, ECF No. 57-2.) He also testified that he had used "quite a number [of addresses to receive mail]. I would just use a friend's address, whoever was going to be available, to get some mail of importance, be it a registration or a package." (*Id.* at 33.)

[22] The record establishes elsewhere that Dyan Lollis is Wood's mother.

[23] Wood argues that "a woman tried to activate the card and add herself as an authorized user." (Pl.'s Mot. Partial Summ. J. ¶ 4.) Credit One disputes this, asserting that "there is no evidence that [the] request to add an authorized user was actually made by a woman." (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 3.) Credit One is correct.

(Maragos Dep. 19.)  By July 15, 2013, the balance on the Account exceeded the credit limit of

$300.  No payments were ever made on the Account, and Credit One eventually sold the

account.

Five weeks after the Account's activation, a "lost/stolen report was filed" on the Account

after "Wood called in to report the [A]ccount to [Credit One] as a fraudulent application."

(Maragos Dep. 17.)  According to Wood, at some point in 2012, although "[he is] not ever going

to be a hundred percent on the date," (Wood Dep. 38), he "[w]ent up to the post office box and

found some mail saying [he] owed money to some credit cards," including Credit One, (*Id.* at

35–36).[24]  Wood further stated that "the moment [he] discovered [the Account], [he] did close it

and requested them to start a [sic] identity theft investigation.  And [he] started credit monitoring

with Equifax."  (*Id.* at 36.)

_____

Kim Maragos, Assistant Vice President of Customer Service for Credit One, testified that
Credit One denied a verbal request to add an authorized user to Wood's account "because the
voice that had requested it was not recognized to be one that would match the account details."
(Maragos Dep. 19–20.)  When explaining how a verbal request to add an authorized user works,
Maragos testified that the verbal requests go "through a recording" and "an agent actually listens
to the recording."  (*Id.* at 19.)  As an example, Maragos testified that a male-sounding voice
requesting to be added as an authorized user to an account in a traditionally female name would
"become[] unrecognizable and [Credit One does] not honor that request."  (*Id.* at 19–20.)

Thus, although Maragos's testimony could raise the *inference* that a woman tried to add
herself as an authorized user on the Account, no evidence—and certainly no undisputed
evidence—exists that a woman tried to add herself as an authorized user to the Account.  Other
evidence in the record, especially the Account's primary e-mail address of
"dyanlollis@ymail.com," and Lollis's later notarized affidavit proclaiming that she was the
"rightful owner" of the Account, (Lollis Aff. 1, ECF No. 60-3), could strengthen that inference.

[24] Wood later testified that the credit card statement he discovered in the post office box
was the same one he presented to Sergeant Woodson of the West Point Police Department,
which was dated August 15, 2013.  Although Wood had no independent recollection of the date
on the statement he found in the post office box, and firmly maintained his position that he did
not remember the dates, the record indicates that his initial statement that he discovered the
account statements in 2012 likely is incorrect.  Regardless, nothing is before the Court about a
Credit One credit card account that was opened prior to 2013, and Wood does not assert
otherwise.

Helen Lanham, Credit One's Senior Vice President in Corporate Risk Management, testified that "[b]ased on [Credit One's] investigation and the information that—in reviewing from the CRA, there was nothing to indicate that it was not Mr. Wood who, in fact, opened the account." (Lanham Dep. 73, ECF No. 68-6.) Kim Maragos, Assistant Vice President of Customer Service for Credit One, testified that "[b]ased on the facts [Credit One] has available, it is [Credit One's] belief that Mr. Wood did apply for the card." (Maragos Dep. 13.)

Wood testified that he did not recall ever receiving a solicitation from Credit One in the mail, and that he did not apply, use, authorize anyone to use, or receive goods or services that benefitted him from the Account. He stated that he had problems receiving mail, meaning that he "would be expecting mail [and] would not receive it" at multiple addresses in New Kent and West Point, including at a West Point post office box. (Wood Dep. 24–25.) Wood eventually began to suspect his mother, Dyan Lollis, and his aunt, Frieda Wood, of tampering with mail he received at these several addresses. Although Wood confronted both Lollis and Ms. Wood about his suspicions, neither of them admitted at the time to tampering with his mail. Wood later obtained and submitted an affidavit signed by Lollis, "certify[ing] that [the Credit One credit card was] opened against the will of David Wood, but instead by Dyan Lollis," and stating that she "wish[es] to have [it] transferred back to the rightful owner Dyan Lollis."[25] (Lollis Aff. 1.)

---

[25] Credit One argues that, because Lollis says that "the account[] w[as] opened 'against the will' of Mr. Wood" rather than "explicitly stat[ing] that Ms. Lollis stole Mr. Wood's identity," a jury could reasonably infer that, even if Lollis opened the accounts listed in her affidavit, Wood was aware that she was doing so. (Def.'s Resp. Pl's Mot. Partial Summ. J. 16.)

Certainly, Credit One cannot draw inferences in its own favor when seeking summary judgment. And although the effect of the inference on Wood's Motion for Partial Summary Judgment is a closer call, "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary." *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995) (internal quotation marks omitted). Thus, the Court must consider the evidence as a whole in ruling on the cross-motions for summary judgment.

## 2.   Police Incident Report

On December 8, 2014, Wood reported to Sergeant Woodson of the West Point Police Department that he suspected Lollis had opened the Account in his name. The next day, Wood showed Sergeant Woodson a Credit One bill dated August 15, 2013, that had arrived at the post office box in West Point, Virginia, Over the next several months, Wood contacted law enforcement in multiple jurisdictions in an attempt to report the alleged identity theft. He also contacted the West Point Commonwealth's Attorney regarding a different incident in which he believed his mother had stolen his identity. Although a document exists titled "West Point Police Department Incident Report," (the "Police Incident Report"), (ECF No. 68-4), Wood never received a copy of any police report. Wood testified that he requested a copy of the Police Incident Report approximately seven times over the course of sixty days, but never received one, and did not know that one existed.

Credit One submitted an affidavit in which Sergeant Woodson swears that she is not aware of Wood ever requesting a copy of the Police Incident Report.[26] Karen Schumacher, a custodian of records with the West Point Police Department, also swears in an affidavit that she "has no personal recollection" of Wood, or anyone on his behalf, requesting a copy of the Police Incident Report. (Schumacher Aff. 2, ECF No. 68-13.) Schumacher affirms that if "anyone

---

Because Lollis referred to herself as the "rightful owner," it is not clear that, even if the Court presumed Wood knew she were opening the account, the outcome of the case would change materially. The record makes plain that Wood repeatedly contested the Account's applicability to him.

[26] Woodson also swears that she "concluded that there was insufficient evidence to support a finding of a credible or *bona fide* claim of identity theft by [Wood's] mother. As a result of [her] investigation, [she is] of the belief that Mr. Wood is now at the point where he only wants the credit card companies to write off his bill." (Woodson Aff. ¶ 2, ECF No. 68-5.) The Police Incident Report includes a supplemental notation dated 3/26/15, approximately four months after Wood first spoke with Sergeant Woodson, to the same effect.

makes a request [for] a copy and it has been approved, they [sic] will be given a copy with necessary redactions made."[27] (*Id.*)

### 3.  Credit One's Dispute Resolution Process

The undisputed evidence indicates that Credit One received six Automated Consumer Dispute Verifications ("ACDVs") regarding the Account.[28] Although the record identifies ten different Compliance Condition Codes ("CCC") that can be used, three are especially relevant in this case.

(1)   "XB" indicates "Account information disputed by consumer under the Fair Credit Reporting Act." (Compliance Condition Codes 1, ECF No. 60-5.)

(2)   "XC" denotes "Completed investigation of FCRA dispute—consumer disagrees." (*Id.*) This CCC *never* appears in the Account.

(3)   "XH" means "Account previously in dispute—now resolved, reported by data furnisher." (*Id.*) This is the *only* CCC that appears in the Account.

The undisputed facts establish the following relevant characteristics of Credit One's investigations upon receiving an ACDV:

1) Credit One's dispute agents earn about $15/hour;

2) Credit One's dispute agents do not use a telephone to investigate disputes;

---

[27] In a separate filing, Wood challenges Credit One's use of these affidavits because Credit One never "disclosed [those witnesses] pursuant to [Federal Rule of Civil Procedure] 26(a)(1) [or] in response to Plaintiff's requests for production of documents." (Pl.'s Br. Supp. Mot. Rule 37(c)(1) Sanctions 1, ECF No. 73.) The Court will rule on Wood's Motion for Sanctions in a separate Memorandum Order and, as relevant here, will consider both affidavits in ruling on the motions for summary judgment. (*See* ECF No. 91.)

[28] An ACDV is sent from a CRA, such as Equifax, Experian, or TransUnion, to a Data Furnisher, such as Credit One. "ACDVs initiated by a CRA on behalf of a consumer are routed to the appropriate Data Furnisher based on the CRA and subscriber code affiliations indicated by the [Data Furnisher]. The ACDV is returned to the initiating CRA with updated information (if any) relating to the consumer's credit history." Equifax, *Guidebook for Prospective Data Furnishers: U.S. Consumer Data Operations* 6 (last updated: April 2016), *available at* http://www.equifax.com/assets/USCIS/data_furnisher_guidebook.pdf.

3) Each dispute agent processes between thirty and one hundred disputes a day, averaging between five and fifteen minutes per dispute;

4) Credit One dispute agents have no quotas for the amount of disputes they should process, and they are not evaluated based on the volume of disputes they process;

5) Once Credit One has investigated a dispute, and made a determination, it will not always separately investigate a subsequent dispute received within thirty days of the earlier determination;

6) Credit One dispute agents are trained to create PDF files documenting the validation steps they take when they use tools "other than in-house systems" (Purged Fraud Apps 4, COB2256, ECF No. 68-4);

7) If a Credit One dispute agent processes and validates a dispute for an account that has been "purged" or "charged-off,"[29] as Wood's was, the dispute agent is trained to update the Compliance Condition Code ("CCC") to "XH," which means "Account previously in dispute, investigation completed, reported by data furnisher," (*id.* at 2–4, COB2253-56); and,

8) If a Credit One dispute agent processes a dispute for an account that has been "purged" or "charged-off," and is not able to validate the account, the dispute agent is trained to delete the account with the reason "Delete Due to Fraud," (*id*).

In almost all situations, Credit One's policies instruct an agent responding to an ACDV to update the CCC to XH—indicating that a previous dispute existed but is now resolved—once the agent has completed his or her investigation.[30] Credit One's "Customer Service Back Office

---

[29] A "charge-off" account (also known as a "purged" or "sold" account) is one that "is no longer owned by Credit One and/or [has] been purged from the processing system." (COB2253.)

[30] Credit One argues in its Brief in Opposition to Wood's Motion for Partial Summary Judgment that "Credit One's procedures dictate that, 'If a consumer disputes the completeness or accuracy of any information that the bank has reported to the CRA, the bank will not report the information to the CRA without notice that the information is disputed by the consumer.'" (Def.'s Br. Opp. Pl.'s Mot. Summ. J. 11.)

Credit One's argument misses the point. Wood's Complaint does not challenge Credit One's written policies or procedures; it challenges the actions Credit One took with respect to his account. Thus, Credit One's actions in response to Wood's disputes are relevant, not the policies Credit One has written down. Further, Ms. Lanham testified that Credit One complies with this written policy by reporting a CCC of "XH," "indicating that the account had been in dispute." (Lanham Dep. 88, ECF No. 68-6.) XH, however, indicates that a dispute has existed but is *resolved*. Thus, Lanham's testimony and the undisputed evidence regarding the actions Credit One took in response to Wood's disputes establishes that Credit One was not in fact complying with this written policy.

EOSCAR Manual V.1.2" (the "E-Oscar Manual") instructs agents that, when responding to ACDVs in which the original code reported is XB (consumer disputes the account information under the FCRA), XD or XJ (account closed at consumer request and in dispute under the FCRA), or XF (account in dispute under the FCRA), all of which "indicate an active Dispute," the agent should "update the field with the *same* [CCC] supplied within the ACDV" if an "active Dispute is still being worked." (E-Oscar Manual 1, COB591 (emphasis and capitalization in original).) Once "the Dispute has been resolved," the agents are instructed to "update this field to 'XH,'" (account previously in dispute, now resolved). (*Id.*)

However, when the original ACDV reports a code of XA (account closed at consumer's request), XC (investigation under the FCRA completed and consumer disagrees), XE (account closed at consumer's request, dispute investigation completed, and consumer disagrees), XG (dispute under the Fair Credit Billing Act[31] (the "FCBA") completed and consumer disagrees), or XH (account previously in dispute, now resolved), the agent is simply instructed to update the CCC to XH. For investigations in response to ACDVs of "Purged/Sold Accounts," such as Wood's, Credit One's policies instruct agents to take one of two actions: either delete the account from being reported if the consumer is "found not responsible for the account," or update the CCC to XH (account previously in dispute, now resolved). (Purged Fraud Apps 3–4, COB2255–56.)

---

In an apparent attempt to counter this, Credit One asserts that "Credit One's understanding of a dispute being 'now resolved' is that the investigation has been completed in compliance with the FCRA." (Def.'s Br. Opp. Pl.'s Mot. Summ. J. 11.) Credit One's "understanding" of the FCRA is, of course, not binding on this Court.

[31] 15 U.S.C. § 1601 *et seq.* The FCBA was enacted to protect consumers from unfair billing practices and to provide a mechanism for addressing errors in credit accounts.

Credit One's dispute investigation procedures include no guidelines about when to report a CCC of XC (investigation completed, consumer disagrees)[32] to the CRAs. Indeed, Lanham testified that Credit One does not use the XC CCC at all. Thus, when a consumer disagrees with the outcome of an investigation completed by Credit One, Credit One *never* reports that circumstance to the CRAs, and it therefore is not included on the consumer's credit report.

Moreover, Credit One uses the CCC of XB (consumer disputes the account information under the FCRA) only when "the account is in dispute and the investigation is continuing." (Lanham Dep. 50.) Credit One does not report a CCC of XB after an investigation has completed. If—after an initial investigation has been completed, the account has been verified, and Credit One has reported to the CRA a CCC of XH (account previously in dispute, now resolved)—the consumer submits a second dispute disagreeing with the resolution of the first dispute, Credit One does not update the CCC to XB or XC, but instead continues to report a CCC of XH.

### 4.   Wood's Contact with Credit One

Wood testified that he contacted Credit One immediately after learning the Account existed and, in all, he contacted them at least thirty times, including five letters and approximately twenty-five phone calls. Credit One asserts that it has record of only four communications from Wood to Credit One.[33] Also, Credit One submitted evidence that it sent

---

[32] This is what Wood alleges here.

[33] Credit One notes that only "Mr. Wood's own uncorroborated testimony" indicates that he had such significant contact with Credit One. (Def.'s Resp. Pl.'s Mot. Summ. J. 5.) It then asserts that "the documentary evidence establishes only four communications between Mr. Wood and Credit One." (Def.'s Resp. Pl.'s Mot. Summ. J. 5.)

Clearly, four contacts disputing the same account is not insignificant—especially for an account that is no longer open. More pertinently, Credit One runs afoul of Rule 56 with this argument. *See Mercado v. Lynnhaven Lincoln-Mercury, Inc.*, No. 2:11cv145, 2011 WL

Wood "two requests for an affidavit [of fraud] in this matter," but that it had no record that

Wood ever provided Credit One with an affidavit, even though "a thorough search would have

been made in incoming correspondence to make sure that an affidavit had not been received."

(Lanham Dep. 75–76.)

Wood testified that he does not recall Credit One ever telling him it would be sending an

"affidavit of fraud" for him to fill out and return, that Credit One never suggested that he file an

affidavit of fraud, and that he does not recall ever receiving an affidavit of fraud in the mail.

When shown an example of the letter and attached affidavit of fraud Credit One sends to

customers who claim identity fraud, Wood testified that it was his "first time seeing it." (Wood

Dep. 81.)  However, Wood testified that he sent Credit One a copy of "that notarized thing I

---

13077033, at *2 (E.D. Va. Dec. 14, 2011).  Credit One never provides evidence that additional, undocumented calls between Wood and Credit One did not occur.  Credit One does not point to—and the Court could not find in its own examination of the record—any admissible evidence indicating that Credit One documents all contacts with customers.  At the summary judgment stage, Credit One cannot create a factual dispute by making conclusory allegations. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  Nor can a court weigh credibility of the evidence at the summary judgment stage.

Also, Wood argues that Credit One's attempts to establish a fact as "disputed" merely because Wood's testimony on that fact is uncorroborated are wholly improper.  Quoting a decision from a United States District Court for the Eastern District of Virginia, Wood contends that Credit One expresses a "'fundamental misunderstanding'" of the summary judgment rules when it wrongly asserts this Court could find the lack of damages as "'an undisputed [fact] because the Plaintiff did not have sufficient corroboration of [her] own testimony.'" (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 2 (quoting *Mercado*, 2011 WL 13077033, *2*).)  In *Mercado*, the court sanctioned counsel pursuant to Federal Rule of Civil Procedure 11, for knowingly listing, in a motion for summary judgment, disputed facts as undisputed, in part because "[t]here is no requisite level of corroboration necessary to render a fact disputed." *Id.*

Wood's citation does not persuade because *Mercado* involved a party asserting that facts were *disputed* because the opposing party did not provide sufficient corroboration to create a genuine dispute.  Thus, *Mercado* stands for the principle that even a plaintiff's own undisputed testimony is sufficient to *establish* a genuine dispute.  However, here, Credit One has produced *no* evidence to counter Wood's testimony.  Therefore, "Mr. Wood's own uncorroborated testimony," that he contacted Credit One approximately thirty times, remains undisputed.

signed and had my mom sign."[34] (*Id.* at 128.)  He also stated under oath that he told Credit One

he was "having difficulty getting a copy of the police report," but he gave them "the incident

report number and the number they could call." (*Id.* at 126–27.)

### 5.   Wood's ACDVs

Credit One received and processed six ACDVs regarding the Account.  Each of the

disputes was submitted with a dispute code of "103:  Claims true identity fraud, account

fraudulently opened.  Provide or confirm complete ID." (*See, e.g.*, July 11, 2014 ACDV,

COB51.)

#### a.   July 11, 2014 ACDV

Credit One's Account Notes include an entry dated July 11, 2014, that an ACDV was

received from Equifax in which the cardholder claimed identity theft.[35]  During its investigation

in response to that ACDV, Credit One matched Wood's name, social security number, and

birthday with the information in Credit One's internal files.  However, the address provided in

---

[34] The record is unclear what document Wood is referring to, but Wood submitted here a copy of an April 15, 2015 letter he sent to Equifax, TransUnion, and Experian that references "an affidavit signed by [his] mother admitting to the fraudulent account." (Apr. 15, 2015 Letter, 2, ECF No. 60-3.)  The attached, notarized document "certif[ies] that [the Account was] opened against the will of David Wood, but instead by Dyan Lollis," and states that Lollis "wish[es] to have [it] transferred back to the rightful owner Dyan Lollis." (Lollis Aff. 1.)  Both Lollis and Wood signed the document, which was notarized by notary publics in Florida and Virginia, where Lollis and Wood, respectively, signed. (*Id.*)

[35] Notes in the "FCRA Relevant Information" section of the July 11, 2014 ACDV state:  "Upon discovery I called Credit one and disputed it.  They told me it was under investigation.  I called back every other week only to hear that it was under investigation this continued for 4 months.  Not a word said to me." (July 11, 2014 ACDV 1, COB46.)  The record does not clarify how or by whom the "FCRA Relevant Information" section is filled out, and therefore the record does not establish who wrote or said that statement, and to what that statement refers.  Alexandra Chu, at the time a fraud analyst for Credit One, testified that she believed the information in that section came from the consumer.  She was unsure "if they physically put it in or if they are notes that they are providing the CRAs to tell us.  But from my understanding, they're notes from the customer, . . . . just notes for additional reference." (Chu Dep. 92.)

the ACDV did not match the address Credit One had in its internal files. Credit One responded to the ACDV that the information on the Account was verified, and the account information should be modified "as indicated." (July 11, 2014 ACDV 1, COB46; *see* Chu Dep. 67, ECF No. 68-11 (stating that a response code of 2 means "verified).) Credit One reported a CCC of XH (account previously in dispute, now resolved).

### b.    April 28, 2015 ACDVs

The record identifies two separate ACDVs submitted and responded to on April 28, 2015, both of which were processed by Alexandra Chu, then a fraud analyst for Credit One. During its investigation in response to the first April 28, 2015 ACDV, Credit One matched Wood's name, address, and social security number as provided in the ACDV with the information in Credit One's internal files (COB61, ECF No. 60-6; COB48, ECF No. 60-4.) Chu could not confirm the birthday or telephone number from the ACDV, but she changed the "ECOA Code" from "Individual" to "Joint Contractual Liability," and the "Date Opened" from June 1, 2013, to June 10, 2013. She also matched the address for the Account with an address associated with Wood in Accurint. Based on the investigation she conducted, Chu responded to the ACDV that the account was "verified," and she updated the CCC to XH (account previously in dispute, now resolved). At 8:22 a.m., Chu updated the Account Notes to say that an ACDV from Equifax was received in which the cardholder claimed identity theft, but that the address provided by the cardholder matched the address in Credit One's internal files and "linked to [the cardholder] thr[ough] Accurint," so the cardholder was found "responsible." (Account Notes 3, COB61.)

In the investigation of the second April 28, 2015 ACDV, Credit One matched Wood's name as provided in the ACDV with the information in Credit One's internal files. The record lacks clarity regarding whether any fields were updated or changed. Notes in the "FCRA

Relevant Information" section of the second April 28, 2015 ACDV state: "Provided police report." (April 28, 2015 ACDV 1, COB51.) Additionally, the Account Notes for the second April 28, 2015 ACDV indicate that an "ACDV W/IMAGES" was received from TransUnion. (April 28, 2015 10:06 AM PST Account Notes, COB61.) Alexandra Chu, the agent who processed that ACDV, testified that, although "based on the printout, [she] can't tell whether or not any [document] was provided" with the ACDV, she "would have opened the documents to verify whether or not there actually was a police report in the documents attached." (Chu Dep. 86–87.) Credit One responded to the ACDV that the account was "verified," and reported a CCC of XH (account previously in dispute, now resolved).

At 10:06 a.m., Chu updated the Account Notes to say that an ACDV from Transunion was received "w[ith] images," but that the Account was "previously investigated 4-28-15," and the cardholder was "responsible," so "no further action [was] taken." (Account Notes 3, COB61.) In seeming contradiction to this Account Note, Chu testified that she completed "another investigation on the secondary ACDV" and "validated the information again on the new ACDV against what we had on the account," (Chu Dep. 86), and that she "still did verify the information on the [A]ccount. . . . The information that the CRAs asked us to verify which would be on [the] ACDV, the addresses, you know, the full list of the ACDV, we verified and went through and responded back and validated everything," (*id.* at 100–01). In sum, Credit One "verified that [Wood] was responsible because of the address matches." (*Id.* at 99.) Credit One reported a CCC of XH (account previously in dispute, now resolved).

        **c.**     **May 5, 2015 ACDV**

Credit One received another ACDV regarding the Account on May 5, 2015. The extent to which Credit One conducted an investigation in response to this ACDV remains unclear

because the ACDV printout appears to conflict with the Account Notes and Chu's testimony. The ACDV printout indicates that Credit One matched Wood's name, address, and social security number as provided in the ACDV with the information in Credit One's internal files, and then reported the Account as "verified." The Account Notes, however, indicate that the cardholder was "previously found responsible [on] 4-28-15 [and] no further action [was] taken."[36] (Account Notes 3, COB61.) Credit One reported a CCC of XH.

### d.   June 10, 2015 ACDV

Credit One received a fifth ACDV regarding the Account on June 10, 2015. Credit One matched Wood's name, phone number, and social security number as provided in the ACDV with the information in Credit One's internal files. Credit One also matched the address on file to an address associated with Wood via Accurint. The Account Notes for the June 10, 2015 ACDV indicate that Credit One received an "ACDV w[ith] images" from Experian, and that the address "on file links to [the cardholder] thr[ough] vehicle registration per Accurint." (Account Notes 1, COB59.) Credit One responded to the ACDV that the account was "verified," and reported a CCC of XH.

### e.   June 15, 2015 ACDV

The final ACDV included in the record was sent to Credit One on June 15, 2015. Credit One matched Wood's address as provided in the ACDV with the information in Credit One's internal files. Credit One conducted no further investigation. Credit One responded to the ACDV that the account was "verified," and reported a CCC of XH.

---

[36] The Account Notes, not Chu's testimony, align with the testimony of Jennifer Schmidt, who worked in correspondence processing ACDVs for Credit One, that if an account "was previously found responsible in the prior 30 days for the same reason, [Credit One does] no further investigation. The ACDV is to be responded to . . . . verifying all information that's still in [Credit One's] systems as well as provided by the cardholder on the ACDV itself." (Schmidt Dep. 44.)

### 6.   **Wood's Damages**

Wood submits an affidavit in which he swears that he suffered numerous damages as a result of his disputes with Credit One.  He states that he lost income from the time he spent disputing the Account.  He affirms that he "suffered many credit denials," including denials from Comenity/Paypal, Spring Leaf Financial, Wells Fargo, and Eastern Virginia Bank, until he eventually "withdrew from the credit market so that [he] didn't have to keep wasting time . . . applying and getting turned down [for credit]."  (Wood Decl. ¶¶ 5–13, ECF No. 67-4.)  Wood also states that he had difficulty finding a place to live because of his credit report.  He "moved from place to place, occasionally staying with friends, sometimes renting rooms," and living "in [his] car for approximately one month total."  (*Id.* ¶¶ 19–20.)

> Wood testified under oath that the Account being included on his credit report
>
> negatively impacted my credit.  I couldn't get apartments.  I had to keep moving around.  I had to sometimes stay in a car because the houses I was staying at wouldn't—they were just tired of having another person in the house.  Places I should have gone, I couldn't.  People I should have seen, I didn't.
>
> . . . .
>
> I tried to get a personal loan.  I tried to get a . . . construction loan.  And I attempted a . . . private school loan.

(Wood Dep. 156–58.)  As a result, Wood's relationships suffered, he lost interest in topics that used to bring him pleasure, he experienced shame, insecurity, feelings of hopelessness and fear, feelings of anger and frustration, and feelings of demoralization.

Wood did not remember the names of the apartment complexes to which he applied and was denied; the companies with which he applied for credit cards; or the dates he applied for personal, construction, or school loans.  He had no copies of denial letters from any company or person.  He could not remember the dates of the times he slept in his car, although he could remember the names of three people who allowed him to park his car in their yards.  And he

27

testified that he had never sought counseling or medical attention because of the emotional

distress he experienced related to his credit issues.

## II. Standard of Review: Motions for Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record

as a whole and in the light most favorable to the nonmoving party, determines that there exists no

genuine issue of material fact, and that the moving party is entitled to judgment as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Liberty Lobby*, 477 U.S. at

248–50. "A fact is material if the existence or non-existence thereof could lead a jury to

different resolutions of the case." *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL3653878,

\*4 (E.D. Va. June 30, 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly

filed evidence supporting its motion for summary judgment, the nonmoving party may not rest

upon mere allegations in the pleadings, but instead must set forth specific facts illustrating

genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. These facts must be presented in the

form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

"Parties asserting that a fact cannot be or is genuinely disputed must comply with the

requirements of [Federal Rule of Civil Procedure] 56(a) and [Local Civil Rule] 56(B)." *Burke v.

Experian Info. Sols., Inc.*, No. 1:10cv1064, 2011 WL 1085874, at \*3 (E.D. Va. March 18, 2011).

"If a party fails to properly support an assertion of fact or fails to properly address another

party's assertion of fact . . . , the court may: (1) give an opportunity to properly support or

address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary

judgment if the motion and supporting materials—including the facts considered undisputed—

show that the movant is entitled to it; or[,] (4) issue any other appropriate order." Fed. R. Civ. P.

56(e). Ultimately, the court must adhere to the affirmative obligation to bar factually

unsupportable claims from proceeding to trial. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126,

1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24).

A court views the evidence and reasonable inferences drawn therefrom in the light most

favorable to the nonmoving party. *Liberty Lobby,* 477 U.S. at 255. Whether an inference is

reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia*

*Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party

is entitled 'to have the credibility of his [or her] evidence as forecast assumed.'" *Miller v.*

*Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v.*

*Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

> In the end, the non-moving party must do more than present a scintilla of evidence in its favor. Rather, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find the facts in his [or her] favor.

*Sylvia Dev. Corp.*, 48 F.3d at 818 (internal quotations, citations, and alterations omitted). The

ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party. If the

[nonmoving party's] evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

Where the court is faced with cross motions for summary judgment, as in the instant case, the

court must review each motion separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d

516, 523 (4th Cir. 2003).

## III. Analysis: Credit One's Motion for Summary Judgment[37]

In its Motion for Summary Judgment, Credit One argues that:  (1) Wood offers

insufficient evidence that he suffered damages as a result of Credit One's actions to survive a

motion for summary judgment, which goes to Counts VI, VII, and VIII; and, (2) Wood offers

insufficient evidence that Credit One *willfully* failed to comply with the FCRA requirements to

survive a motion for summary judgment, which also goes to Count VI, VII, and VIII.  Because

Wood must show either actual damages or a willful violation of the FCRA in order to state a

claim, if Credit One's assertions are correct, the Court must grant summary judgment for Credit

One and dismiss the entire Complaint.

### A.    The FCRA, Generally

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting,

promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of

Am. v. Burr*, 551 U.S. 47, 52 (2007).  The FCRA provides a private right of action for consumers

against entities or persons that violate the statute.  *Id.* at 53.  If a violation of the FCRA occurs

through negligence, "the affected consumer is entitled to actual damages." *Id.* (citing 15 U.S.C.

§ 1681o(a)).  For willful violations of the FCRA, the consumer may recover actual, statutory,

and punitive damages.  *Id.* (citing 15 U.S.C. § 1681n(a)).  The Supreme Court of the United

States has interpreted willfulness to include both knowing and reckless violations.  *Id.* at 57–58.

Reckless actions entail "an unjustifiably high risk of harm that is either known or so obvious that

it should be known." *Id.* at 68 (quoting *Farmer v. Brennan,* 511 U.S. 825, 836 (1994)).

---

[37] In ruling on Credit One's Motion for Summary Judgment, the Court will view the
evidence and all reasonable inferences therefrom in the light most favorable to Wood. *See
Liberty Lobby,* 477 U.S. at 255.

## B. Damages Under the FCRA

Credit One contends that it is entitled to summary judgment on Counts VI, VII, and VIII alleging negligent non-compliance under 15 U.S.C. § 1681o because Wood "cannot show actual damages as a result of Credit One's" actions. (Def.'s Mot. Summ. J. 2.)  This argument disregards well-settled law in this circuit, and therefore does not prevail.

### 1. Legal Standard

The FCRA provides a private cause of action for consumers damaged by violations of the statute. *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th Cir. 2007). "A successful plaintiff can recover both actual and punitive damages for willful violations of the FCRA, and actual damages for negligent violations. Actual damages may include not only economic damages, but also damages for humiliation and mental distress." *Id.* (internal citations omitted). "The [United States Court of Appeals for the] Fourth Circuit has specifically affirmed awards of damages for emotional distress in FCRA cases." *Burke*, 2011 WL 1085874, at *8 (citing *Sloane*, 510 F.3d at 503–07). A plaintiff's testimony alone can support an emotional distress award when a plaintiff is able to "'reasonably and sufficiently explain the circumstances of [the] injury and [does] not resort to mere conclusory statements.'" *Sloane*, 510 F.3d at 503 (first alteration in original) (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996)); *see also Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) (holding that a plaintiff's damages evidence was sufficient to survive a motion for summary judgment when the plaintiff "allege[d] that he suffered emotional distress and loss of reputation" because "[d]amages for such injuries are recoverable under the FCRA."). However, the Fourth Circuit has warned that:

> not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims. For this reason, although specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to reasonably and

31

sufficiently explain the circumstances of the injury and not resort to mere conclusory statements. Thus, we have distinguished between plaintiff testimony that amounts only to conclusory statements and plaintiff testimony that sufficiently articulates true demonstrable emotional distress.

*Sloane*, 510 F.3d at 503 (internal quotation marks, citations, and alterations omitted).

### 2. Wood's Evidence of Damages Survives a Motion for Summary Judgment

Wood provides sufficient evidence of damages to survive Credit One's Motion for Summary Judgment. In an affidavit, Wood swears that he suffered lost income from the time he spent disputing the Account. He affirms that he "suffered many credit denials," including denials from Comenity/Paypal, Spring Leaf Financial, Wells Fargo, and Eastern Virginia Bank, until he eventually "withdrew from the credit market so that [he] didn't have to keep wasting time . . . applying and getting turned down [for credit]."[38] (Wood Decl. ¶¶ 5–13.) Wood also avers that he had difficulty finding a place to live because of his credit report. He "moved from place to place, occasionally staying with friends, sometimes renting rooms," and living "in [his]

---

[38] Contrary to Credit One's assertions, Wood has produced admissible evidence that he lost opportunities to participate in the credit market. Credit One asserts that "the credit reports produced by Mr. Wood do not, without further evidence, demonstrate attempts to obtain credit." (Def.'s Rep. Pl.'s Opp. Def.'s Mot. Summ. J. 3.) However, in ruling on Credit One's Motion for Summary Judgment, the Court will view the evidence and all reasonable inferences therefrom in the light most favorable to Wood. *See Liberty Lobby*, 477 U.S. at 248–50. Thus, even were the Court to disregard Wood's Declaration regarding applying for credit, the credit reports still are sufficient evidence to support an inference that Wood was denied credit, and therefore suffered damages, to survive a motion for summary judgment. Thus, Wood does not allege "a statutory violation divorced from any real world effect." *See Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017).

However, the Court will also consider the evidence in Wood's Declaration. Credit One inexplicably objects to Wood's Declaration, sworn under penalty of perjury, because it does not precisely comply with 28 U.S.C. § 1746, which, as Credit One acknowledges, merely states that a declaration must be in *substantially* the form put forth in that statute. Section 1746 provides, in relevant part, that a person may support any matter with a sworn declaration "in *substantially* the following form: . . . 'I declare . . . under penalty of perjury that the foregoing is true and correct.'" 28 U.S.C. § 1746(2) (emphasis added). Credit One asks this Court to reject otherwise admissible evidence because Wood's Declaration omitted the words "true and correct." The Court overrules Credit One's objection.

car for approximately one month total." (*Id.* ¶¶ 19–20.) Wood's relationships suffered, he lost interest in topics that used to bring him pleasure, he experienced shame, insecurity, feelings of hopelessness and fear, feelings of anger and frustration, and feelings of demoralization. Wood swears that he has "lost countless hours of sleep," and he has felt "sick to [his] stomach." (*Id.* ¶ 31.)

In his deposition testimony, Wood provided details of the damages he suffered. He stated that the Account being on his credit report

> negatively impacted my credit. I couldn't get apartments. I had to keep moving around. I had to sometimes stay in a car because the houses I was staying at wouldn't—they were just tired of having another person in the house. Places I should have gone, I couldn't. People I should have seen, I didn't.

(Wood Dep. 156.) Although he could not identify specific dates on which, or companies by which, he was denied credit, and he produced no letters documenting his denial of credit, such proof is not required for Wood to survive Credit One's motion for summary judgment. *See, e.g.*, *Miller*, 913 F.2d at 1087 (stating that the nonmoving "party is entitled to have the credibility of his evidence as forecast assumed" (internal quotation marks omitted)).

Even if the Court were to disregard Wood's testimony about his lost credit opportunities,[39] or his declaration about the lost income from time he spent addressing his disputes with Credit One,[40] Wood's evidence of emotional damages by itself could allow Wood

---

[39] Of course, lost credit opportunities qualify as damages under the FCRA. *See, e.g.*, *Sloane*, 510 F.3d at 501 (holding that evidence that a plaintiff "attempted to secure lines of credit from a variety of financial institutions, only to be either denied outright or offered credit on less advantageous terms" was sufficient to support a finding of economic damage).

[40] Loss of income from time spent addressing credit disputes also is a cognizable damage under the FCRA. *See, e.g.*, *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 241 n.2 (4th Cir. 2009) (concluding that Robinson "proffered sufficient evidence of loss of income from [approximately 300 hours] missed from work addressing Equifax's errors").

to survive summary judgment.[41]  The signed, sworn statements in Wood's declaration and his

deposition testimony describe "true demonstrable emotional distress," and are not simply

conclusory statements.  *See, e.g., Sloane*, 510 F.3d at 502 (affirming the district court's ruling

that the jury's emotional distress award was "not an unreasonable conclusion from [the]

evidence" because the jury could have found that the defendant's actions "directly led to the

mounting frustration and distress that [plaintiff] felt for almost two years").  Wood's statements

under oath detail damaged relationships, lost sleep, and feelings of shame, anger, fear,

hopelessness, and frustration.  In light of the clearly settled law in the Fourth Circuit on this

issue, the Court must deny Credit One's Motion for Summary Judgment on the issue of damages.

### C.   Willful Failure to Comply Under the FCRA

Credit One contends that it is entitled to summary judgment on Counts VI, VII, and VIII

alleging willful non-compliance under 15 U.S.C. § 1681n because Wood "cannot show that

Credit One 'knowingly and intentionally committed an act in conscious disregard for the rights'

of the consumer." (Def.'s Mot. Summ. J. 2–3 (quoting without attribution).)  Wood presents

evidence on this issue sufficient to survive a motion for summary judgment.

### 1.   Legal Standard

In *Safeco*, the Supreme Court interpreted the meaning of "willfulness" in the context of

15 U.S.C. § 1681n as covering "not only knowing violations of [the statute], but reckless ones as

---

[41] Credit One argues that "Wood's affidavit ties the denial of credit/housing generally to his credit report . . . without specifically stating that the Credit One account was a 'substantial factor' in the adverse decisions." (Suppl. Mem. Law Supp. Def.'s Mot. Summ. J. 2.)  The Court need not address that specific argument because even assuming, *arguendo*, that Credit One is correct about Wood's damages relating to lost credit and denial of housing, Wood pleads other damages, such as emotional distress and lost wages, in a way that "'reasonably and sufficiently explain[s] the circumstances of [the] injury and [does] not resort to mere conclusory statements.'" *Burke*, 2011 WL 1085874, at *8 (quoting *Sloane*, 510 F.3d at 503 (second alteration in original)).

well." 551 U.S. at 57 ("The standard civil usage [of the term willful] thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations . . . ."). A "reckless" action includes conduct that "violat[es] an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer*, 511 U.S. at 836). Thus, the *Safeco* Court held that a company subject to the FCRA "does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69 (explaining that a company's reading of the statute can be erroneous without being objectively unreasonable).

"Because 'summary judgment is "seldom appropriate" on whether a party possessed a particular state of mind,' courts have frequently held that willfulness is a question of fact for the jury." *Thomas*, 2016 WL 3653883, at *9 (citing *Dalton*, 257 F.3d at 418). The Fourth Circuit has held that a plaintiff in a FCRA lawsuit provided sufficient evidence of willfulness, even under a standard that required the plaintiff to prove the defendant had "knowingly and intentionally committed an act in conscious disregard for the rights of the consumer," when the trial record showed that: (1) the defendant's "records reflected the ongoing dispute"; (2) the defendant's "reports to the CRAs did not reflect that ongoing dispute"; and, (3) the defendant "*intended* not to report that ongoing dispute." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

### 2. A Genuine Dispute of Material Facts Exists Regarding Whether Credit One Acted Willfully Under 15 U.S.C. § 1681n

Wood produces sufficient evidence to establish a genuine dispute of material fact about whether Credit One acted willfully under § 1681n. The undisputed evidence shows that Wood

reported the Account as fraudulently opened five weeks after its activation, and directly

contacted Credit One directly approximately thirty more times.[42]   Credit One received six

ACDVs from three different CRAs regarding the Account in fewer than two months.  For each

ACDV, Credit One investigators spent only five to fifteen minutes investigating Wood's

disputes.  Although the investigations were not solely internal and were not automated, the

investigators did not use telephones or contact Wood directly.  In Wood's case, the only outside

information Credit One relied on in its investigations of his multiple disputes was Accurint,

which it used to confirm that the address on the Account matched an address associated with

Wood.  Each time, after completing an investigation, Credit One reported a CCC of XH,

indicating that any dispute regarding the account had been resolved.  Credit One never reported a

CCC that would indicate that the consumer continued to disagree with the results of its

investigations.[43]

Importantly, all of these actions were consistent with Credit One's written policies and

procedures for investigating account disputes.[44]  Once Credit One has completed an ACDV

---

[42] As discussed above, Credit One argues that only "Mr. Wood's own uncorroborated testimony" indicates that he had such significant contact with Credit One, (Def.'s Resp. Pl.'s Mot. Summ. J. 5), and asserts that "the documentary evidence establishes only four communications between Mr. Wood and Credit One," (*id.*).  However, because the Court assumes the credibility of Wood's evidence when ruling on Credit One's Motion for Summary Judgment, *see Miller*, 913 F.2d at 1087, and because Credit One has produced no evidence to the contrary, "Mr. Wood's own uncorroborated testimony," that he contacted Credit One approximately thirty times, remains undisputed.  Moreover, even if Wood had contacted Credit One only four times, the Court would find that, coupled with the other evidence in the record, a material dispute existed regarding willfulness in this case.

[43] Indeed, Credit One's policies dictated that, when an account had been sold or "charged off," as Wood's had, it would never report the account as in dispute—it would either delete the account for fraud or report a CCC of XH, as it did in Wood's case.

[44] In support of summary judgment on this issue, Credit One argues that "Credit One had in place written procedures and policies governing its investigation of credit disputes. . . . Mr.

investigation, it will not always separately investigate a subsequent dispute involving the same issue received within thirty days of the prior ACDV investigation and determination. If an account-holder submits an ACDV or other dispute claiming that the account was opened due to identity fraud, and simultaneously submits a police report, Credit One will "delete the account due to fraud." (Schmidt Dep. 36–37.) However, if the account-holder submits no police report, and Credit One can "link [the account to the account-holder] through multiple . . . systems," Credit One will hold the account-holder responsible. (*Id.* at 37.)

When Credit One receives an ACDV claiming that an account was fraudulently opened due to identity theft, a dispute agent will "[v]erify information to [the] system." (*Id.* at 31.) First, the agent will review documents, "[i]f there's documents." (*Id.*) If no documents exist, the agent will "review and verify the information given by [the cardholder on the ACDV] versus the information that is in [Credit One's] system." (*Id.* at 32.) The agent will compare the first and last name, social security number, date of birth, phone number, and address submitted in the dispute with the information contained in Credit One's system. If any of those fields match, the agent will indicate that it is the same. The agent will "delete [the account] due to fraud" if the agent "can't find anything that links the cardholder to the account from the information they've provided." (*Id.* at 35.)

---

Wood cannot produce any evidence to demonstrate that Credit One did not comply with these procedures in investigating his disputes." (Def.'s Reply Pl.'s Opp. Mot. Summ. J. 8.) This argument misses the point.

To be entitled to summary judgment on the issue of willfulness, Credit One would have to demonstrate that, based on the undisputed material facts, no reasonable jury could return a verdict in Wood's favor on the issue of willful noncompliance with the FCRA. *Liberty Lobby*, 477 U.S. at 249–50. Simply having written procedures and policies in place does not carry this heavy burden. In Credit One's case, the "written procedures and policies governing its investigation of credit disputes" could in fact *contribute* to a jury returning a verdict in Wood's favor regarding willful noncompliance with the FCRA—but that is not the issue before the Court.

Credit One's Compliance Guidelines Manual acknowledges that it is "required by law to report accurate information to CRAs." (COB340.)  The section titled "Responsibilities as a Furnisher of Information to CRAs" states that "[i]f a consumer disputes the completeness or accuracy of any information that the Bank has reported to a CRA, the Bank will not report the information to the CRA without notice that the information is disputed by the consumer." (*Id.*) However, its E-Oscar Manual trains agents to update the CCC to XH in all situations except when "an active Dispute is still being worked." (E-Oscar Manual 1, COB591.)  The record indicates that Credit One never uses the CCC of XC, which indicates that an investigation under the FCRA has been completed and the consumer disagrees with the outcome.  Credit One uses the CCC of XB, indicating that the consumer disputes the account information under the FCRA, only when the investigation is continuing.  Those investigations usually take approximately five to fifteen minutes.

In support of summary judgment on this issue, Credit One asserts merely that "[t]here is no evidence that Credit One knowingly or intentionally did anything to violate the law." (Def.'s Mot. Summ. J. 8.)  However, as noted above, a company violates the FCRA when it commits "not only knowing violations . . . , but reckless ones as well." *Safeco*, 551 U.S. at 57. Significant evidence exists in the record—submitted by both Wood and Credit One—that Credit One's policies and actions regarding Wood's disputes "ran a risk of violating the [FCRA] substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Viewing the record as a whole and in the light most favorable to Wood, *see Celotex*, 477 U.S. at 322–24, a reasonable juror could conclude that, because it *never* reports a CC of XC (investigation completed, consumer disagrees): "(1) [Credit One's] records reflected the ongoing

38

dispute over the debt, (2) [Credit One's] reports to the CRAs did not reflect that ongoing dispute, and (3) [Credit One] *intended* not to report that ongoing dispute." *Saunders*, 526 F.3d at 151.

The Court must deny Credit One's motion for summary judgment on the issue of willfulness.

## IV. Analysis: Wood's Motion for Partial Summary Judgment[45]

Wood asks the Court to find as a matter of law that: (1) Credit One's reporting that the Account was his was inaccurate, an element of Counts VI and VIII; (2) Credit One failed to conduct a reasonable investigation of Wood's disputes, an element of Count VI; and, (3) Credit One failed to truthfully report the results of its investigation back to the CRAs, an element of Count VIII.

### A. No Genuine Dispute of Material Fact Exists Regarding Whether Wood Opened and Was Responsible for the Account

Wood asks the Court to declare, as a matter of law, that Credit One's reporting that Wood opened and was responsible for the Account was inaccurate, which is an element of Counts VI and VIII. Wood has produced admissible evidence that he did not open the Account or authorize its opening, and Credit One has not produced admissible evidence to support a reasonable inference that he did. Therefore, examining the evidence and drawing all reasonable inferences therefrom in the light most favorable to Credit One, there exists no genuine dispute of material fact as to whether Wood opened and was responsible for the Account, and the Court must grant Wood's motion for summary judgment on this issue.

Wood testified in his deposition that he did not apply for, use, authorize anyone to use, or receive goods or services that benefitted him from the Account. He also testified that he did not

---

[45] In ruling on Wood's Motion for Summary Judgment, the Court will view the evidence and all reasonable inferences therefrom in the light most favorable to Credit One. *See Liberty Lobby*, 477 U.S. at 255.

recall ever receiving a solicitation from Credit One in the mail.  He submitted an affidavit from his mother, Dyan Lollis, "certify[ing] that [the Credit One credit card was] opened against the will of David Wood, but instead by Dyan Lollis," and stating that she "wish[es] to have [it] transferred back to the rightful owner Dyan Lollis." (Lollis Aff. 1.)

Credit One's attempt to establish a genuine dispute of material fact on this issue falters. Credit One disputes the weight of Wood's evidence in support of his Motion for Partial Summary Judgment and debates the meaning and significance of Lollis's affidavit, which Credit One argues "does not include a specific admission by Ms. Lollis that she opened credit card accounts using Mr. Wood's identity," and only states that the Account was "allegedly 'opened against the will of David Wood.'" (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 4.)  Credit One also relies on Sergeant Woodson's sworn statement that she "concluded that there was insufficient evidence to support a finding of a credible or *bona fide* claim of identity theft by his mother," and that she subjectively believed "that Mr. Wood is now at the point where he only wants the credit card companies to write off his bill." (Woodson Aff. 2.)  Additionally, although not cited by Credit One,[46] the deposition testimony of Helen Lanham and Kim Maragos address whether Wood opened the Account.  These three sworn statements and Credit One's attempts to dispute the weight of Wood's evidence in support of his Motion for Partial Summary Judgment are the extent of the evidence before the Court that Wood opened and was responsible for the Account.[47] This evidence is insufficient to establish a genuine dispute of material fact on that issue.

---

[46] Under Federal Rule of Civil Procedure 56(c)(3), "[t]he court [ruling on a motion for summary judgment] need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

[47] The Court considered all evidence in the record that complied with Rule 56(c), even that to which Credit One did not cite.  Credit One relied mainly on its responses to Wood's interrogatories, and argued that, based on these responses, and Wood's testimony regarding

First, the Court rejects Credit One's attempts to minimize the weight of Wood's deposition testimony and the affidavit signed by Lollis and Wood. The Court will not weigh the evidence Wood submits in support of his Motion for Partial Summary Judgment. Lollis attested that she wants the account "transferred back to" her, "the rightful owner." (Lollis Aff. 1.) Once a party has properly presented evidence supporting a motion for summary judgment, the nonmoving party must set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322–24. Second, Lanham's testimony, Maragos's testimony, and Sergeant Woodson's affidavit constitute, at best, conclusory statements including no facts on which a reasonable jury could return a verdict in Credit One's favor. *See, e.g., id.* at 249.

Lanham testified only that "[b]ased on [Credit One's] investigation and the information that—in reviewing from the CRA, there was nothing to indicate that it was not Mr. Wood who, in fact, opened the account." (Lanham Dep. 73.) And Maragos testified that "[b]ased on the facts [Credit One] has available, it is [Credit One's] belief that Mr. Wood did apply for the card." (Maragos Dep. 13.)

Even viewing Lanham's and Maragos's testimony in the light most favorable to Credit One, on careful review, they amount only to conclusory statements based on Credit One's belief. Their statements provide no evidence that Wood in fact opened the Account and include no facts on which Credit One relied in forming its belief. Sergeant Woodson's affidavit likewise contains only conclusory statements of her personal belief about the merits of Wood's dispute of the Account, without sufficient facts supporting her belief or establishing her competence to testify

---

where he had lived and received mail, it had a "good faith belief that Mr. Wood responded to the solicitation by requesting the issuance of the credit card." (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 2.) Of course, because Credit One's interrogatories were not executed in compliance with Federal Rule of Civil Procedure 33(b)(5), and amounted to "unsworn, unsigned answers to interrogatories [that] do not meet the requirements of F[ederal] R[ule of] Civ[il] P[rocedure]" 56(c)(4), the Court will not consider these answers. *See Roberts*, 1993 WL 303308, at *3 n.3.

on that matter. *See* Fed. R. Civ. P. 56(c)(4). Even if these statements were admissible, none of them, even taken together, could support a reasonable jury finding that Wood opened and was responsible for the Account.[48]

Wood's deposition testimony and Lollis's affidavit properly support a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, . . . [and] affidavits or declarations . . . .") Credit One, however, has presented no such evidence.[49] Viewing all admissible evidence in the record, drawing all reasonable inferences in Credit One's favor, *see Liberty Lobby*, 477 U.S. at 255, and assuming the credibility of Credit One's evidence, *see Miller*, 913 F.2d at 1087, no reasonable juror could conclude that Wood opened and was responsible for the Account.

The Court must grant Wood's Motion for Partial Summary Judgment on this issue.

---

[48] To the extent that Credit One offers Sergeant Woodson's sworn personal opinion about Wood's motivations as evidence of Wood's responsibility for the Account, the Court cannot discern how Sergeant Woodson's opinion—offered years after Wood began disputing the Account—could have affected Credit One's actions in assessing responsibility for the Account *during* the dispute resolution process.

[49] In its Opposition to Plaintiff's Motion for Summary Judgment, Credit One discusses the deposition testimony of Kim Maragos and asserts that Wood mischaracterizes her testimony in his Motion. Credit One argues that "Mr. Wood's assertion that [Maragos] was unaware of how Mr. Wood allegedly opened the [A]ccount is disingenuous and based upon an incomplete citation that is taken out of context." (Def.'s Response Pl.'s Mot. Partial Summ. J. 2.) Even viewing Maragos's testimony and drawing all reasonable inferences therefrom in the light most favorable to Credit One, it does not create a genuine dispute of material fact. Maragos's answer was "really no answer at all." (*Id.*)

Specifically, in response to a question by counsel for Wood's counsel, Maragos stated that she did not know for certain how Wood allegedly opened the Account. Counsel for Credit One then interjected, "I think her—her response is that she would be able to answer your question if she could refer to a document." (Maragos Dep. 8.) However, Maragos never referred to any document, counsel for Wood moved on, and Maragos never answered the question further.

**B.** **Reasonable Investigation: 15 U.S.C. § 1681s-2(b)(1)(A) (Count VI)**

**1.** **Legal Standard**

Whether a furnisher of information, like Credit One, has satisfied its duty to conduct a reasonable investigation generally depends on the facts of each case. *See Burke*, 2011 WL 1085874, at *5. "[T]he conduct sufficient within one circumstance may be insufficient within another." *Id.* Because these inquiries are necessarily fact-intensive, in the "overwhelming majority of cases," the reasonableness of a furnisher's investigation will be a question for the jury. *Id.* at 6 (citing *Dalton*, 257 F.3d at 416).

In some situations, "the reasonableness of a furnisher's investigative procedure [is related to] the content of the notice of dispute sent by the CRA to the furnisher." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014). Thus, "where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted." *Id.* Further, "[w]hether a furnisher's investigation is reasonable will depend in part on the status of the furnisher—as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer—and on the quality of documentation available to the furnisher." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016). Thus, "whether an investigation is reasonable will depend on what the furnisher knows about the dispute." *Id.* at 1306. However, a furnisher may not "truncate its investigation simply because the CRA failed to exhaustively describe the dispute." *Id.*

Importantly, "the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004). "It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit report,

Congress used the term 'investigation' to include superficial, *un*reasonable inquiries by creditors." *Id.* at 430–31.

### 2. Credit One Did Not Conduct a Reasonable Investigation of Wood's Disputes

Wood produces admissible evidence sufficient to satisfy the demanding standard for summary judgment as to whether Credit One conducted a reasonable investigation of his disputes. Even viewing all the evidence and reasonable inferences therefrom in the light most favorable to Credit One, Wood is entitled to summary judgment because Credit One does not set forth, in admissible evidence, specific facts illustrating that a genuine issue exists about whether it conducted reasonable investigations of Wood's disputes. *Celotex Corp.*, 477 U.S. at 322–24.

Wood has presented compelling evidence that Credit One's investigations of his disputes were cursory. Specifically, the undisputed evidence shows that Wood submitted six disputes via ACDVs of the Account in fewer than three months. In response to those disputes, Credit One did nothing more than verify each time that Wood's personal information on the ACDVs matched his personal information on the Account, and, three of the six times, Credit One merely compared that personal information to addresses associated with Wood on Accurint.

The undisputed evidence establishes that Credit One spends as few as five and as many as fifteen minutes investigating an individual dispute, and that each investigation of Wood's ACDVs cost Credit One approximately six or seven dollars. Credit One never calls a cardholder who claims true identity theft. And the only information an investigation could produce that would cause Credit One to determine that an individual's account was fraudulently opened is either a police report or a signed affidavit alleging fraud. Finally, Wood has presented

undisputed evidence that he contacted Credit One on the phone more than twenty-five times and sent them at least five letters.[50]

Further, Credit One has not produced any evidence contradicting the evidence that its investigations were unreasonable. Instead, Credit One focuses on what Wood did not do to establish that the Account had been fraudulently opened. Wood never submitted an identity theft report to either Credit One or any credit reporting agency, even though Experian advised Wood that he should provide an identity theft report. TransUnion notified Wood that it could not accept a document he sent because an "[a]ctual [law enforcement report was] not enclosed." (TransUnion Letter 1, ECF No. 68-10.) Credit One also argues that, although Wood claims he called Credit One to dispute the Account frequently, and a notation on an ACDV states that Wood had called back frequently, that evidence "is not corroborated by Credit One's account history notes."[51] (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 12.) Finally, Credit One submits

---

[50] As noted above, Credit One argues that only "Mr. Wood's own uncorroborated testimony" indicates that he had such significant contact with Credit One, and asserts that "the documentary evidence establishes only four communications between Mr. Wood and Credit One." (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 5.) As discussed, *see supra* nn. 33, 42, Credit One runs afoul of Rule 56 with this argument. Nonetheless, the result would be the same even if the Court considered only the ACDVs Wood submitted.

  Viewing all the evidence and reasonable inferences therefrom in the light most favorable to Credit One, Credit One's investigations in response to the six ACDVs it received did not constitute the type of "reasonable investigation" required under the FCRA. *Johnson*, 357 F.3d at 431. Rather, the investigations merely involved matching information Wood submitted in the ACDVs with information contained in Credit One's internal computers or with information associated with Wood. That is not enough to comply with the requirement that an investigation under the FCRA contain "some degree of careful inquiry." *Johnson*, 357 F.3d at 430.

[51] Clearly, an allegation that evidence produced by Wood "is not corroborated" by evidence produced by Credit One does not create a genuine dispute as to a material fact. Once a party has properly filed evidence supporting its motion for summary judgment, the nonmoving party may not rest upon mere allegations that facts are in dispute. *Celotex*, 477 U.S. at 322–24. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, . . . [and] affidavits or declarations . . . . " Fed. R. Civ. P. 56(c)(1).

affidavits from Sergeant Woodson and Karen Schumacher, both at the West Point Police Department. Sergeant Woodson swears that she "concluded that there was insufficient evidence to support a finding of a credible or *bona fide* claim of identity theft by his mother," and that she is "of the belief that Mr. Wood is now at the point where he only wants the credit card companies to write off his bill."[52] (Woodson Aff. ¶ 2.) And both Sergeant Woodson and Schumacher affirm that, to their knowledge, Wood never requested a copy of the Police Incident Report from their office.

Here, the undisputed evidence viewed in the light most favorable to Credit One establishes that Credit One failed to conduct a reasonable investigation of Wood's disputes. Although Credit One attacks the weight and credibility Wood's evidence, Credit One presents no evidence that it performed any "degree of careful inquiry," *Johnson*, 357 F.3d at 430, or that it conducted anything other than "superficial, *un*reasonable inquir[y]," *id.* at 430–31, into whether the Account was opened in Wood's name, with his birthday, social security number, and an address that was affiliated with him. It was unreasonable for Credit One to simply match Wood's personal identifiers with those associated with the Account when Wood continued to dispute the Account for years, claiming identity fraud.[53] Credit One's actions did not amount to

---

[52] Of course, neither Sergeant Woodson's conclusory statement regarding the sufficiency of the evidence she uncovered in her investigation, nor her stated "belief"—unsupported by sufficient facts or her qualification as an expert—can create a genuine dispute of material fact as to whether Credit One's investigation in this situation was reasonable. Further, the Court cannot discern how Sergeant Woodson's personal belief, made known to Credit One after discovery began in this case, could have influenced Credit One's investigation of Wood's disputes.

[53] Such actions are especially unreasonable when, as here, the alleged identity thief is a family member who could have knowledge of or access to an individual's personal information—including social security number, address, and birthdate—and who might use that information to fraudulently open a credit account.

a reasonable investigation under the FCRA. *See, e.g., id.* at 431 ("[T]he plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors.").

The Court must Grant Wood's Motion for Partial Summary Judgment on this issue.

## C.    Reporting Correct Information:  15 U.S.C. § 1681s-2(b)(1)(C) (Count VIII)

### 1.    Legal Standard

"The purpose of [15 U.S.C.] § 1681s-2(b) is to require furnishers to investigate and verify that they are in fact reporting complete and accurate information to the CRAs after a consumer has objected to the information in his [or her] file." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009) (citing *Johnson*, 357 F.3d at 431). "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading.  Courts have held that a credit report is not accurate under [the] FCRA if it provides information in such a manner as to create a materially misleading impression." *Saunders*, 526 F.3d at 148; *see also Seamans*, 744 F.3d at 865 ("It is not seriously debated, however, that factually incorrect information is 'inaccurate' for purposes of [the] FCRA."). "[A] credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).  A furnisher is not liable for inaccurate reporting for merely failing to report a meritless dispute, "because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.  It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under 15 U.S.C. § 1681s-2(b)." *Id.*

The undisputed evidence, viewed in the light most favorable to Credit One, shows that

Credit One violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to accurately report the results of its

investigations of the Account to the Credit Reporting Agencies because it continued to report

Wood's account in a manner that indicated his disputes had been resolved when, in fact, they had

not. The Court must grant Wood's partial motion for summary judgment on that issue.

### 2. Credit One Did Not Correctly Report the Results of Its Investigations of Wood's Disputes

The undisputed facts show that, in the span of seventy-four days, Credit One received six

separate ACDVs—each alleging fraud—regarding the Account, and it conducted six separate

investigations. After each investigation, Credit One reported a CCC of XH, meaning that the

Account had previously been in dispute, but the dispute was now resolved. In Wood's situation,

that code was materially misleading. Wood continued to dispute that the Account was his, and

he continued to dispute the results of Credit One's investigations—as evidenced by the fact that

he continued to submit ACDVs. By reporting a CCC of XH when Wood was continuing to

dispute the accuracy of Credit One's reporting, Credit One "create[d] a materially misleading

impression," that the Account was not in dispute. *See Saunders*, 526 F.3d at 148. This violates

the FCRA.

Credit One attempts to escape this conclusion by asserting that "Credit One's

understanding of a dispute being 'now resolved' is that the investigation has been completed in

compliance with the FCRA." (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 11.) This reasoning

fails. First, as noted above, a furnisher violates the FCRA by reporting information that

"create[s] a materially misleading impression." *Saunders*, 526 F.3d at 148. The plain language

of the XH CCC—"now resolved" implies that any dispute a consumer previously had about the

account is "settle[d]," or a solution has been found. *Resolve*, New Oxford American Dictionary

(1st ed. 2010) (defining "resolve" as, *inter alia* "settle"). Thus, by reporting a CCC of XH on the Account, Credit One created the impression that a solution had been found to Wood's dispute when Credit One's investigations clearly did not solve or end the dispute.

Furthermore, if the XH CCC was intended to apply to situations in which a furnisher has completed an investigation in compliance with the FCRA, regardless of whether the consumer agrees or not, the XC CCC, indicating that an investigation has been completed and the consumer disagrees, would be unnecessary because the XH CCC would encompass that result.[54] Credit One had at its easy disposal a means of accurately reporting the results of its investigations into Wood's disputes of the Account, and it failed to do so.

There is no dispute that Wood submitted multiple ACDVs in a short time period alleging fraud on the Account, and yet Credit One continued to report the results of its investigations with a code that indicated the account was previously in dispute, but that dispute was resolved. Reporting this code, while Wood continued to dispute the validity of the Account, at the very least, "create[d] a materially misleading impression" in violation of the FCRA. *See Saunders*, 526 F.3d at 148.

The Court must grant Wood's Motion for Partial Summary Judgment on this issue.

---

[54] As discussed above, Credit One's dispute investigation procedures include no guidelines about when to report a CCC of XC to the CRAs. For investigations in response to ACDVs of "Purged/ Sold Accounts," such as Wood's, Credit One's Policies instruct investigators to take one of two actions: either delete the account from being reported if the consumer is "found not responsible for the account or the [CCC] must be updated to 'XH,' which represents 'Previously in Dispute Now Resolved.'" (COB2256.)

Credit One's E-Oscar Manual specifically instructs its investigators that when the original CCC code reported in the ACDV is XA (account closed at consumer's request), XC (investigation under the FCRA completed and consumer disagrees), XE (account closed at consumer's request, dispute investigation completed, and consumer disagrees), XG (dispute under the FCBA completed and consumer disagrees), or XH (account previously in dispute under the FCBA or FCRA, now resolved), the agent should update the CCC to XH. Indeed, Helen Lanham, Credit One's Senior Vice President in Corporate Risk Management, testified that Credit One does not use the XC CCC at all.

### V. Wood's Motion to Strike the Testimony and Opinions of James Lynn

Wood moves to exclude the testimony and opinions of Credit One's designated expert, James F. Lynn, on three bases: (1) Lynn is not qualified to testify about the FCRA; (2) Lynn's methodology is not reliable and is, in fact, non-existent; and, (3) Lynn's testimony would not be helpful to the trier of fact. For the reasons that follow, the Court will grant Wood's Motion to Exclude.

### A.     Legal Standard

Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993) (second alteration in original)). "'There are many different kinds of experts, and many different kinds of expertise.' The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him [or her] to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co.,* 166 F. Supp. 2d 378, 391 (D. Md. 2001) (quoting *Kumho Tire,* 526 U.S. at 150).

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and[,]
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702's requirement "that the evidence or testimony '[help] the trier of fact to understand the evidence or to determine a fact in issue'" goes primarily to relevance.

*Daubert,* 509 U.S. at 591 (quoting Fed. R. Evid. 702) (noting that expert testimony must be relevant).

Although experiential testimony does not rely on the scientific method, "this does not lead to a conclusion that 'experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.'" *United States v. Wilson,* 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note). Thus, although "a district court's task in examining the reliability of experiential expert testimony is therefore somewhat more opaque," *id.*, to be qualified under Rule 702, "an experiential expert witness [must] 'explain how [his or her] experience leads to the conclusion reached, why [his or her] experience is a sufficient basis for the opinion, and how [his or her] experience is reliably applied to the facts,'" *id.* (quoting Fed. R. Evid. 702 advisory committee's note).

In determining whether proffered expert testimony is sufficiently reliable so as to assist the trier of fact, *Daubert* suggests that courts consider several non-dispositive factors: (1) whether the expert's methodology can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and, (4) whether the theory or technique has gained general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593–94. This analysis applies to all proffered specialized knowledge, not solely scientific expert testimony. *Kumho Tire,* 526 U.S. at 141. "Under

[Federal Rule of Evidence] 104(a),[55] the proponent of the expert testimony must establish the admissibility of the testimony by a preponderance of the evidence." *Lee v. City of Richmond*, No. 3:12cv471 2014 WL 5092715, at *2 n.2 (E.D. Va. 2014).

In the Fourth Circuit, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). However, under Federal Rule of Evidence 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). It is the district court's responsibility to "distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). "The best way to determine whether opinion testimony contains legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct, and specialized meaning in the law different from that present in the vernacular.'" *Id.* (quoting *Torres v. Cty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). Conclusory testimony, for example, that "a company engaged in 'discrimination,' that a landlord was 'negligent,' or that an investment house engaged in a 'fraudulent and manipulative scheme' involves the use of terms with considerable legal baggage, . . . nearly always invades the province of the jury," and should usually be excluded. *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006); *see also In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 629 (S.D.W. Va. 2013) (excluding expert testimony that

---

[55] Rule 104(a) states in full:

(a) In General. The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege

Fed. R. Evid. 104(a).

products were "'not reasonably safe' or that [the manufacturer] 'failed to warn'" as impermissible legal conclusions).

## B.   Analysis

As an initial matter, the Court could exclude the testimony of James Lynn because, in another violation of the federal rules, the expert report Credit One submitted fails to comply in any meaningful way with the standards of Federal Rule of Civil Procedure 26(a)(2)(B).[56]   Lynn's report offers six opinions in enumerated paragraphs, and an additional seven opinions in response to specific questions posited by Credit One.   His report "is simply a series of conclusions offered without any explanation as to his bases or reasoning.   That, of course, runs afoul of the provisions of [Rule] 26(a)(2)(B)."   *Lee*, 2014 WL 5092715, at *11.

This failure to comply with Rule 26 became more apparent to the Court when, at the October 18, 2016 motion hearing, Lynn supplemented his resume with nearly seven years of

---

[56] Rule 26(a)(2)(B) states in full:

(B) *Witnesses Who Must Provide a Written Report.*   Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-- prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.   The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and[,]
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

experience as a consultant to Citizen & Farmers Bank in West Point, Virginia. Lynn's resume, ("Resume") submitted under Rule 26 was thirteen pages long, but included no mention of this experience.

The Court need not decide whether Lynn's failure to comply with Rule 26 prevents him from testifying as an expert. As discussed below, the Court finds that: (1) Lynn is not qualified to testify as an expert regarding FCRA matters; (2) Lynn's lack of articulated methodology in reaching his conclusions renders his expert testimony unreliable; and, (3) Lynn's expert testimony amounts to impermissible legal conclusions that are not helpful to the jury. For those reasons, the Court will grant Credit One's motion to strike Lynn's testimony and opinions.

### 1.   Lynn is Not Qualified to Testify as an Expert About the FCRA

Wood argues that, "while Mr. Lynn's credentials indicate that he may be qualified to offer opinions regarding many banking-related issues, they fail to show that he has any expertise, skill, knowledge, training, or anything even remotely related to issues under the FCRA." (Mem. Supp. Mot. Exclude 11, ECF No. 58.) Credit One argues in response that Lynn

> is qualified to offer expert opinions regarding many banking-related matters. He has worked in the financial industry for more than [thirty] years and has training and experience in consumer and commercial lending, federal and statute [sic] consumer protection laws and regulations, and policies and procedures in the industry. He has also taught courses on consumer-lending issues, including the requirements of the FCRA.

(Def.'s Opp. Pl.'s Mot. Exclude 4, ECF No. 66.) Credit One misunderstands the standards for establishing expertise and the considerations that govern admitting expert testimony. The Court finds that Lynn is not qualified to testify about the FCRA issues in this case.

Lynn's experience in the banking industry, as Credit One points out, is significant. He has provided "litigation support" on "consumer and commercial lending issues" for over fifteen years. (Resume 2, ECF No. 39-3.) He "facilitated . . . credit training workshops" for four years.

(*Id.* at 12.)  He was Vice President and Commercial Relationship Manager at Maryland National
Bank.  He taught undergraduate courses in Corporate Finance and Security and Investment
Analysis.  And, as the Court learned in the October 18, 2016 hearing, he served as a consultant to
Citizen & Farmers Bank for seven years.

Lynn's experience might qualify him to testify as an expert in banking and finance
matters.  However, the bulk of Lynn's experience with matters involving the FCRA came from
serving, not as a FCRA expert witness, but as a "litigation consultant" for three to five cases
involving the FCRA more than ten years ago.  (Lynn Dep. 20–21.)  Even if Lynn were an expert
in banking and finance matters, that does "does not *ipso facto* qualify him to testify as an expert
in all related areas," such as matters related to the FCRA.  *See Shreve v. Sears, Roebuck & Co.*,
166 F. Supp. 2d 378, 391 (D. Md. 2001).  The Court finds that Lynn does not possess any kind of
"scientific, technical, or other specialized knowledge [relevant to the FCRA] that will help the
trier of fact to understand the evidence or to determine a fact in issue" in this case.  *See* Fed. R.
Evid. 702(a).

### 2.   Lynn's Proposed Testimony is Not Reliable

Wood argues that "[n]owhere in Mr. Lynn's report or deposition testimony does he set
forth the methodology for reaching his conclusions, let alone provide any basis for their
reliability."  (Mem. Supp. Mot. Exclude 9.)  Credit One argues in response that Lynn should be
allowed to testify because:  "Plaintiff's counsel's questions [during Lynn's depositions] . . .
failed to meaningfully explore [the methodology] of Mr. Lynn's work in this case," and Lynn's
"methodology and reasoning are sound."  (Def.'s Opp. Pl's Mot. Exclude 3–6.)[57]  The Court

---

[57] These arguments ignore that "[u]nder Rule 104(a), the proponent of the expert
testimony must establish the admissibility of the testimony by a preponderance of the evidence."
*Lee v. City of Richmond*, No. 3:12cv471 2014 WL 5092715, at *2 n.2 (E.D. Va. 2014).  Credit

finds that Lynn sets forth no methodology for reaching his conclusions, and his opinions therefore lack reliability.

Lynn's report, as noted earlier, contains a series of conclusory assertions about Credit One's investigations into Wood's disputes.[58]  For example, Lynn states, "In my opinion, the conduct of Credit One Bank, NA was compliant with Section 1681s-2(b)(1)(A) as well as subsections (1)(B), (1)(C), (1)(D), and (1)(E)."  (Report at 5.)  In response to the question, "Did Credit One report the results of the investigation to the consumer reporting agency?"[59]  Lynn replies in his report, "Yes."  (*Id.* at 6.)

Although the first page of Lynn's report states that all his opinions are "based upon my extensive experience in the financial services industry for more than 30 years," (*id.* at 1), an experiential expert witness must "explain how [his or her] experience leads to the conclusion reached, why [his or her] experience is a sufficient basis for the opinion, and how [his or her] experience is reliably applied to the facts," *Wilson*, 484 F.3d at 273 (quoting Fed. R. Evid. 702 advisory committee's note).  Lynn explains none of that.  Similarly, neither Lynn's deposition testimony nor his testimony during the October 18, 2016 hearing adequately explained how his experience led to his opinions, why his experience formed a sufficient basis for his opinions, or how he reliably applied his experience to the facts of this case.  The Court finds that Lynn's

---

One bears the burden of establishing Lynn's qualification, the reliability of his methodology, and the helpfulness to the jury of his testimony.

[58] Lynn's report implicitly acknowledges the lack of articulated methodology.  The section containing his opinions is introduced by the statement "A summary of my findings, opinions, judgments, and conclusions on the six ADCVs is as follows[.]"  (Report 3.)  What follows is exactly what Lynn introduces in the previous sentence: a series of opinions and conclusions without any explanation of methodology or reasoning.

[59] Of course, whether Credit One reported the results of its investigation to the CRAs is not an issue in this case—the issue is whether Credit One *accurately* reported those results.

proposed expert testimony is not based on sound methodology, and is therefore not sufficiently reliable.

### 3.   Lynn's Proposed Testimony is Not Relevant

Wood argues that "Mr. Lynn reaches . . . inadmissible legal conclusions and bases them on nothing more than his say-so." (Mem. Supp. Pl.'s Mot. Exclude 15.)  Credit One counters that Wood's argument rests on Wood's belief that "Mr. Lynn's opinion as to whether Credit One conducted a reasonable investigation is a foregone conclusion that Credit One, as a matter of law, could not have conducted a reasonable investigation and, thus, should not be permitted to testify otherwise." (Def.'s Opp. Pl.'s Mot. Exclude 5.)  The Court finds that Lynn's opinions merely draw legal conclusions, and are therefore not relevant.

Lynn's stated opinions include:

1) "[E]ach ACDV was completed by Credit One Bank in a timely manner."
2) "[Credit One] Bank's verifications were reasonable, appropriate, and consistent with the standard of care in the consumer data furnishing industry . . . . "
3) "Credit One Bank, NA was compliant with Section 1681s-2(b)(1)(A) as well as sub-sections (1)(B), (1)(C), (1)(D), and (1)(E)."
4) Credit One had reasonable procedures in place to investigate ACDV disputes.
5) Credit One conducted a reasonable investigation with respect to Wood's disputes.
6) Credit One reviewed all relevant information provided by the CRAs.
7) Credit One reported the results of the investigation to the CRAs.
8) None of Credit One's investigations should have resulted in a finding that the information Credit One was reporting was incomplete, inaccurate, or potentially misleading.

(Report 3–6.)

These opinions simply draw legal conclusions about the merits of Wood's claims against Credit One.  Lynn stated in his deposition that, although he was not "an expert in the technical

details of how information is communicated[,] [he is] an expert on the facts of the case, on what happened, what was supposed to happen, what should have happened and so forth." (Lynn Dep. 29–30.) Lynn's opinions on this issue, as evidenced from his report, his deposition testimony, and his testimony before the Court during the October 18, 2016 hearing are "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts." *McIver*, 470 F.3d at 562. The Court finds that Lynn's opinions merely draw legal conclusions, and therefore lack relevance. Because Lynn fails to satisfy any of the three Rule 702 factors, the Court will grant Wood's Motion to Exclude his testimony, opinions, and report.

## VI.  Conclusion

For the foregoing reasons, the Court denied Credit One's Motion for Summary Judgment, (ECF No. 57); granted Wood's Motion for Partial Summary Judgment, (ECF No. 55); and granted Wood's Motion to Exclude, (ECF No. 56).

An Amended Order further clarifying the Court's ruling shall issue.

_____
/s/
M. Hannah Lauck
United States District Judge

Date: 9 | 21 | 2017
Richmond, Virginia